CHAS. E. FOXLEY, Respondent, v. J. Y. RICH, J. M. JENSON and JOHN PINGREE, as Individuals and Copartners Doing Business as THE BANK OF BRIGHAM CITY, and Homer J. Rich, Appellants.

No. 1961. Decided January 13, 1909 (99 Pac. 666).

1. ESCROWS—TIME EFFECTIVE. An escrow deed does not become effective until the conditions upon which it is executed are fully performed, and the taking possession of the property by the purchaser, and part performance, ordinarily does not render it effective, so that, where a deed was deposited in escrow for delivery when the vendee paid purchase-money notes, taxes, etc., title remained in the vendor until that time. (Page 170.)

2. ESCROWS—TIME EFFECTIVE—RELATION BACK TO DELIVERY. The passing of title under an escrow deed, upon performance of the conditions upon which it was executed, will relate back to the execution of the deed only when justice requires it. (Page 170.)

3. VENDOR AND PURCHASER—RESCISSION—RIGHT OF PURCHASER. While the vendor, in a contract to convey, by a subsequent conveyance to another prevents himself from complying with his contract, or the conveyance amounts to a repudiation of the contract, or places an additional burden upon the vendee, the latter may treat the conveyance as an abandonment of the contract by the vendor, and recover any payments thereunder; but, where the conveyance does not prevent performance of the contract, as where the transferee recognizes the contract vendee's rights, and is willing to convey, the vendee cannot rescind. (Page 171.)

4. VENDOR AND PURCHASER—RESCISSION—RESCISSION BY PURCHASER —ABANDONMENT BY VENDOR. Where the vendor, in a contract to convey, conveyed the land to another, to whom the purchase-money notes had been previously transferred for the purpose of securing the notes, with the understanding that the transferee should convey to the contract vendee when the notes were paid, in accordance with the contract, such conveyance by the vendor did not amount to an abandonment of the contract, so as to entitle the vendee to rescind and recover payments made under the contract. (Page 172.)

5. VENDOR AND PURCHASER—RESCISSION—RIGHT OF VENDEE. The fact that the vendor, under a contract to convey, breached and abandoned the contract in February by conveying to another would not justify the failure of the contract vendee to make payments due before that time, so as to entitle him to rescind and recover payments already made. (Page 173.)

6. VENDOR AND PURCHASER—PERFORMANCE OF CONTRACT—PAYMENT—
TENDER—SUFFICIENCY. A tender of payment by the vendee, con-
ditioned upon the vendor making deeds to certain lands not cov-
ered by the contract, and after making arbitrary deductions of
unliquidated claims against the vendor, was not good. (Page
174.)

7. VENDOR AND PURCHASER—RESCISSION—AGREEMENT BY PARTIES—
EFFECT. A vendee, in an executory contract to convey, may re-
cover the amount paid thereunder, where both parties volun-
tarily rescinded the contract. (Page 174.)

8. VENDOR AND PURCHASER—RESCISSION BY VENDEE—EFFECT—RIGHTS
ON RESCISSION. The purchaser, under a contract to convey, may
recover the amount paid thereunder, where the vendor fails to
perform his part of the contract, or was guilty of fraud in
making it, or the purchaser rescinds, under an option to do so
contained in the contract, or where both parties are in default
and unable to complete the contract at the time stipulated.
(Page 174.)

9. VENDOR AND PURCHASER—RESCISSION BY VENDEE—RIGHT. That
the vendor demanded some security for the debt, after the ven-
dee had refused to make payments due, would not entitle the
latter to rescind the contract and recover payments already
made. (Page 175.)

10. VENDOR AND PURCHASER—CONSTRUCTION OF CONTRACT—"DEFAULT
IN PAYMENT." A contract to convey provided that the deed
should be delivered to the vendee upon payment of a certain
amount each year, from 1904 to 1910, and in case of "default in
payment" the deed should be returned to the vendor, and pre-
vious payments should be used as rent on the premises. Held,
that the contract could not be construed so as not to put the
vendee in default for nonpayment until 1910, but his failure to
make any payment when it became due would amount to a de-
fault. (Page 177.)

11. VENDOR AND PURCHASER—PERFORMANCE OF CONTRACT—BREACH—
EFFECT. A contract to convey required the payment of the pur-
chase price at stipulated periods, and provided that, in case of de-
fault in payment, the escrow deed was to be returned to the ven-
dor, and previous payments should be used as rent on the prem-
ises. Held, that the rights of the parties upon a breach by the
vendee were measured by the contract itself, and the vendor was
entitled thereunder to apply payments already made upon the
rent, and to have the deed returned, while the vendee was en-
titled to have the unpaid purchase-money notes surrendered to
him, so that the vendor could not recover thereon. (Page
178.)

12. CONTRACTS—BREACH—EFFECT. Where the parties to a contract stipulate what the result of a breach thereof shall be, the courts will ordinarily give it only the result stipulated. (Page 179.)

APPEAL from District Court, First District. *Hon. W. W. Maughan,* Judge.

Action by Charles E. Foxley against J. Y. Rich and others. From a judgment for plaintiff, defendants appealed.

REVERSED AND REMANDED (*with directions*).

*J. D. Call* for appellants.

*J. D. Johnson* for respondent.

FRICK, J.

The pleadings in this case cover twenty-eight pages of the printed abstract, and are too long to be set forth even in condensed form. The evidence is also quite voluminous, and we shall not attempt to set it forth, except such parts as we deem are controlling of the principles involved. The object of. the action was to recover back money paid by respondent to the appellant J. Y. Rich in pursuance of a certain executory contract entered into between them, whereby respondent agreed to purchase from said Rich certain lots, together with a dwelling-house thereon, in Brigham City, Utah. The other appellants were made parties to the action because they had succeeded to the rights of Rich by assignment of the contract and certain promissory notes, hereafter to be noticed.

Before such assignment respondent had made a payment of $500 as part payment of the purchase price for said lots, which was made at the time the contract was entered into, and he agreed to pay the remainder, amounting to $3,500, in seven annual installments, the first of which became due on November 15, 1904. Mr. Rich executed a deed to the

premises at the time the contract was entered into, and both the contract and the deed were dated August 5, 1903. The deed was placed in escrow, and was to be held by the Bank of Brigham City, in which the other appellants were interested in some capacity or other, until respondent had made the final payment. The agreement between Rich and respondent, so far as material, is as follows: "Brigham City, Utah, August 5, 1903. To The Bank of Brigham City—Upon payment of the amounts listed below, you will deliver to Chas. E. Foxley, or order, the inclosed deed from Mrs. Florence Rich and husband, conveying the following property in Brigham City, Utah, to wit: [describing it] payments to be made as follows: On or before November 15, 1904, $500.00; on or before November 15, 1905, $500.00; on or before November 15, 1906, $500.00; on or before November 15, 1907, $500.00; on or before November 15, 1908, $500.00; on or before November 15, 1909, $500.00; on or before November 15, 1910, $500.00. Total $3,500.00. All of the above to draw interest at the rate of ten per cent. per annum from October 1, 1903, payable on or before the 15th day of November of each year. In case of default in payment of above payments, said deed to be returned to J. Y. Rich, and previous payments made shall be used as rent on said premises. Charles E. Foxley shall pay all taxes and assessments that may be levied against said premises after Oct. 1, 1903, and may pay all or any part of said amounts specified above at any time, whether due or not, and stop interest thereon, and shall be entitled to the possession of said premises on and after the 1st day of October A. D. 1903. John Y. Rich, Chas. E. Foxley. Witness: John Pingree." Upon the back of the agreement was indorsed: "Received the within-described escrow papers this 5th day of August, 1903. The Bank of Brigham City, John Pingree, Cashier."

Respondent, at the time the foregoing agreement was entered into, also made and delivered to J. Y. Rich seven promissory notes for $500 each, negotiable in form. The

first note was made payable on the 15th day of November, 1904, and the others were payable annually on the 15th day of November of each year thereafter, so that the last one became due on November 15, 1910. Respondent made no payments except the one of $500 at the time the contract was entered into. At the time of the trial, however, he claimed that he had made some arrangements with J. Y. Rich, during the summer or fall of 1904, whereby it was agreed between them that certain moneys, which were claimed to be owing by said Rich to respondent's father and to Foxley Bros., were to be applied on the $500 note coming due November 15, 1904, but respondent, on cross-examination, admitted that Mr. Rich had settled and paid both his father and Foxley Bros. in full, and that respondent never had any personal claims of any kind against Mr. Rich, and made no claim that anything had been paid upon the contract except the $500 aforesaid. He had paid the taxes for 1904, and had expended some small sums of money for some work done on the property. The claim, therefore, that the first note had been paid, or that respondent is entitled to any benefit from the alleged transaction with regard thereto, may be entirely eliminated from consideration in this case.

Soon after the contract was entered into, and the notes had been delivered, J. Y. Rich transferred them to the Bank of Brigham City, to secure an indebtedness owing by him to the bank. On the 3d day of November, 1903, and pursuant to the contract of purchase, respondent went into possession of the premises. He remained in the house but a short time, but held possession of the barn for several months, when he moved out and abandoned the premises. The water pipes froze, and the house, being deserted, was entered by some boys, and one of the appellants took possession of it, placed it in repair, and used it, paying and receiving rent therefor. On February 9, 1905, after respondent had failed to pay the note which became due on November 15, 1904, and had been transferred to the bank,

as aforesaid, the appellant J. Y. Rich, intending to leave the State of Utah for either Cuba or California, in order to further secure the payment of respondent's notes, executed a deed to the premises sold to respondent to Homer J. Rich, the cashier of the bank, which deed was duly delivered and, some time thereafter, recorded. While the deed was absolute in form, it nevertheless was made and delivered as security only for the $3,500, which respondent still owed on the premises. The object of the transfer seemingly was to place the title of the property in Homer J. Rich, and, after respondent had completed payment of his notes, the deed placed in escrow should be delivered to him, and the deed given to Homer J. Rich, which was but a mortgage, should be canceled by making proper conveyance to respondent or otherwise. The giving of this deed is what respondent claims induced him to refuse to go on and complete his contract of purchase, and which, he contends, constituted a rescission or abandonment of the contract between him and J. Y. Rich, by reason of which respondent is entitled to recover back his first payment, all taxes and money paid and expended by him for repairs, and is further entitled to a cancellation and surrender of his notes. It is also contended by him that J. Y. Rich had agreed not to transfer the notes, but that they were to remain in escrow with the deed. This is denied by all the appellants who were present when the contract was entered into between respondent and J. Y. Rich. But, independent of this denial, there are other circumstances, in connection with the admissions made by respondent, which show that such was not the intention of either the respondent or J. Y. Rich. Nor did respondent claim anything, by reason of the transfer of the notes to the bank, until long after he was in default. The transfer of the notes is therefore not a controlling—not even a material—element in the case.

The controlling elements in the case depend entirely upon respondent's own testimony and admissions. Respondent, at the time the agreement was entered into, was a practicing

attorney at Brigham City, and was then aspiring to the office of county attorney for Box Elder county. He drew up the agreement between himself and J. Y. Rich, and, as he testified, prepared it so that he could not be in default until the last payment became due in 1910. At the trial respondent was, in substance, asked the following question by appellant's attorney: "You drew this contract yourself, . . . and you wrote it 'in case of default in payment of above payments, said deed to be returned to J. Y. Rich and previous payments made shall be used as rent on said premises,' and that you could not default until 1910 ?" Respondent answered the attorney as follows: "I have told yourself, I believe, also other parties, possibly Homer Rich, that the contract, the way I drew it up, couldn't be forfeited until 1910. . . . My intention, when the contract was drawn up, was that it couldn't be forfeited until 1910." And he further said that the bank had frequently asked him to pay the note coming due November 15, 1904, and had threatened to sue him. Respondent further testified that he first learned that the deed was made to Homer J. Rich in the latter part of the year 1904, about a month after the first note became due, or early in the year 1905, and that, "I have never had any intention of carrying it [the agreement] out since I found out Homer had the place." The foregoing statements are repeated in various ways in respondent's testimony. He further said that he never attempted to get possession of the property after Homer J. Rich got the deed; that he went to see it only as a matter of curiosity, after he himself had left it, as before stated. The testimony further shows, and respondent does not dispute it, that the appellants at all times were able, ready, and willing to deliver the deed that was placed in escrow, or to execute any other conveyance respondent desired, upon the payment of the purchase price of the premises; that they also offered to surrender up the seven notes to respondent if he would surrender up the contract, or give them a formal release of his rights in and to the property. Respondent

refused the first proposition, he says, because appellants wanted him to give some additional security for the deferred payments, and refused the second because he wanted appellants to refund to him the money sued for in this action, which they refused to do. It also was made to appear that in January, 1905, respondent made a tender to J. Y. Rich of at least a part of the money, which became due and payable on November 15, 1904, but which respondent claimed was all that was owing to J. Y. Rich. The tender was, however, conditional, and required Mr. Rich to execute some deeds to some lots, and in addition thereto respondent reduced the amount due on the note by deducting therefrom certain amounts which he claimed were due to his father and to Foxley Bros. As we remarked before, the evidence is very lengthy and covers many transactions. We, however, do not deem any of the additional evidence material, nor could it in any way enlighten the reader, or assist in determining the underlying principles upon which the decision must ultimately rest, and for this reason we have not set it forth, and shall not refer to it further. The case was tried to the court, who made findings of fact and conclusions of law and entered judgment in favor of respondent for the first payment, the taxes and other expenditures made by him, which, after deducting a certain amount for rent, amounted in the aggregate to the sum of $538.06. The court also declared the judgment to be a lien on the premises and required the appellants to surrender and deliver for cancellation the seven promissory notes which were executed and delivered by respondent to J. Y. Rich and held by the bank. From this judgment the appellants prosecute this appeal and assign numerous errors.

These errors are far too numerous to permit of separate treatment within the limits of an opinion. The whole matter, so far as respondent's rights are concerned, may be disposed of upon the assignment that the judgment is contrary to law. The question, therefore, is, Does the law permit the respondent to recover back the payment made by him

upon the contract of purchase, in view of the foregoing facts, which are either conceded or not disputed by him? It will be observed that the contract was executory, and the deed was placed in escrow to be delivered only after all the deferred payments should be made by respondent. The contract also expressly provided that, "in case of default in payment of the above payments, said deed to be returned to J. Y. Rich, and previous payments made shall be used as rent on said premises." It is quite clear, therefore, that it was not intended, by either party to the agreement, the title should pass, but it was intended that if the payments were not made, the deed should be returned to J. Y. Rich, and the payments that had been made should be applied as rent for the use of the premises by respondent. The respondent, as a lawyer, prepared this agreement himself, and he certainly knew the legal effect thereof. But even in the absence of any stipulation, the placing of the deed in escrow left it, so far as the passing of title is concerned, precisely as if no deed had been executed. A deed placed in escrow does not become effective until the conditions upon which it is executed have been fully performed, and taking possession of the property by the purchaser, and part performance, ordinarily do not change this rule. (16 Cyc. 576, 577; *Calhoun County v. American Emigrant Co.*, 93 U. S. 127, 23 L. Ed. 826; *Burkam v. Burk*, 96 Ind. 273; *Fuller v. Hollis*, 57 Ala. 437.) There may be circumstances under which a deed placed in escrow, when all the conditions are performed, will relate back to the time of its execution, but this is the case only when justice requires that the doctrine of relation be enforced. The title, therefore, remained in J. Y. Rich until respondent had complied with all the conditions imposed on him, namely, until he had made the final payment and paid the taxes assessed against the property. Respondent, however, contends that J. Y. Rich rescinded or abandoned the agreement by conveying the property to his brother, Homer J. Rich, after the agreement was entered into;

that this gave appellant the right to recover back the payments made by him, and he cites the following cases, which he claims support his contention: *Dantzeiser v. Cook,* 40 Ind. 65; *Atkinson v. Scott,* 36 Mich. 18; *Ft. Payne C. & I. Co. v. Webster,* 163 Mass. 134, 39 N. E. 786. Upon the other hand, appellants insist that the conveyance by J. Y. Rich to Homer J. Rich was not a breach of the contract, and gave respondent no right to disregard it, and hence he is not entitled to recover in this action. As supporting this contention the following authorities are claimed to be in point: *Joyce v. Shafer,* 97 Cal. 335, 32 Pac. 320; *Garberino v. Roberts,* 109 Cal. 125, 41 Pac. 857; *Webb v. Stephenson,* 11 Wash 342, 39 Pac. 952.

Upon a careful examination of the authorities cited by respondent and appellants it will be seen that there is, in reality, no difference between them in principle. It is quite true that conveyance of the title by the vendor, after entering into an executory contract of sale, may have the effect claimed for it by respondent, and it is equally true that it may not affect the obligations assumed by the contract as claimed by the appellants. If the effect of the conveyance is such that it places it beyond the power of the vendor to comply with the terms of his contract of sale, or amounts to a repudiation of it, or places a substantial burden upon the vendee not assumed by him in the contract, then the vendee need not further comply with his part of the contract, but may treat it as abandoned by the vendor, and sue and recover back any payments he has made upon the contract, in an action for money had and received by the vendor for the use and benefit of the vendee. *James v. Burchell,* 82 N. Y. 108. Upon the other hand, if the conveyance made has the effect of transferring the title to another, who has received it with knowledge of the existing contract, or where it is not beyond the power of the vendor to comply with the contract of sale, although a conveyance is made, or where, as in the case at bar, the title is transferred in the nature of security for the obligation assumed by the vendee, and the party to

whom the title is transferred and the security given is at all times, able, ready, and willing to comply with the contract, and in all cases where the party to whom the title is transferred claims no right to the property, but holds it for convenience merely, and is willing to transfer the title when the vendee shall comply with his contract, then the vendee has no right to regard the contract abandoned, but in order to recover back any payment made by him must rely on some default of the vendor. The law in this class of cases, the same as in all others, looks to the substance, and not to the mere form, of a transaction. The cases cited by both parties, when considered in the light of the facts and circumstances which controlled the courts in deciding them, do no more than to illustrate and apply these principles.

In the cases cited by respondent it is not held that the mere naked fact of making a conveyance by a vendor after entering into a contract of sale constitutes an abandonment *per se* of the contract on his part, nor is it held by those cited by appellant that, in conveying the title after a contract for sale is entered into, under no circumstances may an abandonment of the contract by the vendor be effectuated; but the true principle upon which the decisions rest is that the effect that such a conveyance will be given depends upon the intention of the parties, and upon whether the title is in fact placed beyond the control of the vendor so his acts amount to a repudiation of his contract. If such is the effect, the vendee need not perform. In the case at bar the title was no doubt transferred by J. Y. Rich, the vendor, after he had entered into a contract, but all who have any interest in the matter understood that this was done merely for the purpose of transferring whatever security the land might afford to Homer J. Rich for the use and benefit of the Bank of Brigham City, which held the notes of respondent, and which notes the respondent was required to pay before he was entitled to be invested with the title of the premises. The legal effect of the whole transaction simply amounted to this: That instead of J. Y. Rich hold-

ing the legal title to the land as security for respondent's notes, the title was transferred to Homer J. Rich, and if the notes should be paid, either he or whoever held the title would transfer it to respondent if the deed given to Homer J. Rich as security could not be canceled of record the same as a trust deed or a mortgage might be. Respondent, as we have seen, never claimed that he had any personal claim against J. Y. Rich, and what claim he did make against him in favor of his father and Foxley Bros. was fully paid with respondent's consent. Respondent, therefore, had neither an equitable nor a legal right which was in any way affected by the transfer of either the notes or the title to the land. But the transfer was not made until February, 1905, about three months after respondent was in default of payment of the note for $500 which fell due November 15, 1904. How, then, could respondent be heard to say that J. Y. Rich made it impossible for respondent to perform his part of the agreement, and that therefore he had a right to treat the contract as abandoned or rescinded, and therefore could recover back the money he had paid? In what way had J. Y. Rich breached the contract? In what way had he burdened or changed the condition of the title to the land, or of the promises made either by himself or those made by respondent? J. Y. Rich was contemplating leaving the State of Utah. He owed the bank, and in that way he arranged matters so that respondent could pay his notes to the bank instead of paying them to the original payee, J. Y. Rich. This is the whole substance of the transaction, and it afforded the respondent not the slightest excuse to refuse to fulfill the promises he had made, or to meet the obligations he had assumed. But in any event, if we should assume that what J. Y. Rich did in February, 1905, was tantamount to a breach of the contract, what right did this give respondent to refuse compliance with his part of the agreement in November, 1904? Having made default in payment in November, 1904, how could he predicate a right to recover back prior payments made by him upon the alleged

default of J. Y. Rich occurring in February, 1905? Certainly respondent cannot claim anything for his alleged tender made in January, 1905. Even if this tender had been made in time, it would have been of no legal effect, in view of the fact that it was conditional. In making this tender respondent demanded that Rich comply with respondent's requests in executing and delivering certain deeds to lands in which respondent had no interest, and which had no relation to the contract of purchase. Moreover, respondent made deductions from the amount due upon the note in accordance with his own claims, without any agreement that any set-off might be made, and upon matters wholly unliquidated, and after deducting what he arbitrarily claimed to be due to his father and to Foxley Bros., he tendered the balance to Rich as payment in full for the note, with accrued interest. Such a tender, in a case like the one at bar, is of no effect. (28 A. & E. Ency. L. (2 Ed.), 15, 16.) Is there any ground, therefore, upon which respondent could base a right to recover back the payment made by him upon the contract of purchase? When and under what circumstances may the purchaser, under an executory contract for the purchase of real property, recover back money paid upon the contract in case the contract has been abandoned or rescinded?

The conditions under which such an action may be maintained are well and clearly stated by Mr. Justice McAllister, in the case of *Baston v. Clifford*, 68 Ill. at page 69, 18 Am. Rep. 547, in the following language:

"(1) Where the rescission is voluntary, and with the mutual consent of the parties, and without default on either side. (2) Where the vendor cannot, or will not, perform the contract on his part. (3) Where the vendor has been guilty of fraud in making the contract. (*Smith v. Lamb*, 26 Ill. 396, 79 Am. Dec. 381; *Bannister v. Read*, 1 Gilman [Ill.] 99; 1 Chit., Pl. 355; *Battle v. Rochester City Bank*, 5 Barb. [N. Y.] 414.) (4) Where, by the terms of the contract, it is left in the purchaser's power to rescind it by any act on his part, and he does it. (*Towns v. Barrett*, 1 Term. R. 133; *Gillet v. Maynard*, 5 Johns. [N. Y.] 85, 4 Am. Dec. 329; 1 Chit. on Pl. 356.) (5) Where neither party is ready to complete the contract at the stipulated time, but each is in default. (1 Chit., Pl. 355; Chit. on Cont. [5th Ed.], 632, 633, and notes.)"

In this same case it is held that where the vendor is not in default, and is ready and willing to perform the contract on his part, the vendee cannot recover back money paid by him on the contract. There is not even a pretense in this case that the Bank of Brigham City, or either of the appellants, as successors in right of J. Y. Rich, were not at all times able, ready, and willing to complete the contract, just as Rich had agreed to do. The only claim in this respect that respondent makes is that the appellants did demand of him further security. This, however, was after he was in default, and after, he had refused to pay, and it certainly could not affect his rights after such refusal, nor ought he to complain that they demanded some security after he had shown a disposition to refuse to comply with his agreement. Does the respondent bring himself within any one or more of the grounds stated by Mr. Justice McAllister? He certainly does not bring himself within the first nor the second ground above stated. As to the third there was some claim made by respondent in his complaint that J. Y Rich and Homer J. Rich, in making the conveyance of the lots in question, as hereinbefore stated, intended to cheat and defraud the respondent, and that all the appellants intended to do so in making the transfer of the notes executed by respondent, and in attempting to collect the same from him. While there are some findings by the court in support of these allegations, they seem to have been based entirely upon what the court assumed to be the legal effect of the conveyance by J. Y. to Homer J. Rich after the contract was entered into. There is not a scintilla of evidence to support either the allegations or findings other than the making of the conveyance aforesaid. These findings, therefore, are in the nature of conclusions, deduced from the fact that a conveyance had been made after the contract was entered into. As we have pointed out, the conveyance from J. Y. to Homer J. Rich in no way affected the contract of respondent, and was not, and under the facts in this case could not be, held to amount to either an abandonment or

a rescission of the contract by J. Y. Rich, and it certainly was not done with any bad motive or intention on his part, and could in no way excuse respondent from performing his part of the contract. Respondent, therefore, does not bring himself within the third ground mentioned above. Neither does the case fall within the fourth ground. The conditions of the agreement were that in case default should be made by respondent in any of the deferred payments, then the prior payments should be applied as rent for the use of the premises, and the deed deposited in escrow should be returned to J. Y. Rich. The parties to the contract, therefore, expressly stipulated how the prior payments should be treated, and to what purpose they should be applied. If the parties had stipulated that respondent could terminate the contract at his option, and he had exercised his right to do so, and had terminated the contract, and nothing had been said about the prior payments, and in case he had not had the use or the right to the use of the property, a different question would be presented. In such a case there would have been no consideration supporting the prior payments, and respondent could have recovered back the money. Moreover, it would, in legal effect, have amounted to a mutual rescission or abandonment of the contract, since J. Y. Rich would have agreed to it by giving respondent the right to terminate the agreement.

This principle is in part illustrated in the case of *White v. Buell,* 90 Cal. 177, 27 Pac. 19. Nor could the respondent avail himself of the fifth and last ground above referred to. There certainly is no basis for the claim that J. Y. Rich or his successors in interest were not ready, able, and willing to complete the sale. The whole matter hinged upon respondent's refusal or neglect to make the payments as he had agreed to do. His conduct, no doubt, was inspired by the construction he placed upon the agreement which he had prepared himself. As he interpreted it, he could not be in default until the last payment fell due in 1910. That such should be the effect, as he himself says, was his intention

when he prepared the contract. He then felt perfectly safe until that time should arrive. It was this, no doubt, that induced him to provide in the agreement that, in case of default on his part, prior payments should be applied as rent for the use of the property. If he could not be in default, and if not in default, could not be required to pay, until 1910, he, no doubt, thought that $500, when applied as rent for the seven intervening years, would be cheap rent. If at the end of that time it was convenient for him to complete the purchase, he would do so, and if not, he would surrender the property with the rent fully paid. Unfortunately for him, the contract does not admit of such a construction. He, therefore, simply deceived himself when he refused to make the payments at the times stipulated in the agreement. He cannot escape by claiming that J. Y. Rich or his successors in interest, the other appellants, were in default. They, as we have seen, did nothing which they could not legally do, and in no way affected the legal rights of respondent. Appellants were not required to do anything except what J. Y. Rich had agreed to do. On making the payments the appellants were not only able, but they were willing, to convey the legal title to respondent unincumbered and unaffected by anything, just as J. Y. Rich had agreed to do. The mere fact of placing the legal title in Homer J. Rich for the purposes and under the circumstances aforesaid did not give the respondent any right to refuse to comply with the terms of his contract. To permit him to recover back his payments under the facts and circumstances of this case would, in effect, offer a premium to purchasers of real estate to refuse to comply with their contracts. If the bargain suited them, they would insist on the completion of the purchase; but if it did not, they would refuse to complete it, and sue to recover back the money paid by them. That no part of the purchase money may be recovered back under circumstances like those which are controlling in this case is illustrated in the following cases: *Aikman v. Sanborn,*

35 Utah—12

(Cal.), 52 Pac. 729; *Joyce v. Shafer,* 97 Cal. 335, 32 Pac. 320; *Dennis v. Strassburger,* 89 Cal. 583, 26 Pac. 1070; *Reddish v. Smith,* 10 Wash. 178, 38 Pac. 1003, 45 Am. St. Rep. 781; *Garberino v. Roberts,* 109 Cal. 125, 41 Pac. 857; *Shively v. Semitropic L. & W. Co.,* 99 Cal. 259, 33 Pac. 848; *Webb v. Stephenson,* 11 Wash. 342, 39 Pac. 952. While numerous other cases might be cited in suport of the doctrine, the foregoing are quite sufficient. In these cases the facts and circumstances cover a wide field, but in all of them the rule that the purchaser must strictly comply with his agreement, or tender performance at the proper time and in a legal manner, is rigorously enforced. From what has been said it follows that the judgment in favor of respondent is contrary to law, and therefore cannot be permitted to stand.

There remains one other matter to be considered. The appellants other than J. Y. Rich, who had succeeded to his rights to the notes, in their answer, by way of counterclaim, sought a recovery upon them against respondent. The court refused to find for or to enter judgment in their favor therefor, and the refusal of the court to do so is assigned as error. We are of the opinion that the court did not err in this ruling. It is conceded by all the appellants that they, so far as the notes and contract are concerned, stand in the shoes of J. Y. Rich; that they have no rights if he would have none, in case he were still the owner of the notes. In case J. Y. Rich still owned the notes, could he recover upon them against respondent, in view of the contract and the facts in this case? We think not. The rights of both Rich and respondent must be measured by the terms of the contract. It was expressly stipulated therein what those rights should be in case of default of payment of the notes. As we have seen, so far as respondent was concerned, his payments were to be applied as rent for the use, or the right to the use, of the property, while, so far as Rich was concerned, he could then apply the payment to that purpose, and receive back the deed he had placed in escrow with

the bank for the benefit of respondent. The parties, there-fore, agreed upon what should result ·in case respondent failed to make the payments, namely, to apply the money as rent, and the return of the deed to Mr. Rich. It, therefore, could not have been contemplated that either party should resort to the courts to compel the other to carry out the other provisions of the contract. They had expressly provided for the breach upon the part of respondent, and Mr. Rich must be satisfied with the result stipulated for by him, and so must those who stand in his shoes, and who have no better rights than he had. While, as we have seen, the law will not aid the respondent to recover back the money which he paid, although the purchase never was completed because of his own neglect, so, too, the law will not aid Mr. Rich, or his successors in interest, to recover upon the notes in the face of the stipulation in the contract that, in case of respondent's default, the deed for the lots, and hence the lots themselves, were to be surrendered to Mr. Rich as a consequence of such default. Where the parties themselves stipulate what the result of a breach of a particular contract shall be, the courts ordinarily have no authority to impose other consequences than those agreed upon. There may be circumstances under which the results would be so inequitable and unjust that a court of equity would be authorized to give relief, but the case in hand presents no such contingency. By the stipulation in the contract that if default should be made in the payments by respondent, the deed to the property placed in escrow should be returned to J. Y. Rich, and the prior payments applied as rent, we think it was contemplated by the parties that in such event the notes, which were mere evidences of the debt assumed by respondent, should be surrendered to him. If respondent was to be deprived of any interest in the property, the appellant Rich was likewise deprived of any right to the money called for by the unpaid notes. While respondent may not recover back the money paid by him, he, nevertheless, is entitled to the surrender of the notes, and

appellants are likewise entitled to the surrender of the contract held by respondent or to the cancellation thereof.

The judgment is therefore reversed, and the cause remanded to the district court, with directions to vacate its findings of fact and conclusions of law, and substitute others in conformity with the views expressed in this opinion, to require the appellants to surrender the notes in controversy to respondent for cancellation, and also require the respondent to surrender the contract for cancellation, and to decree a cancellation of both the notes and the contract, and to enter judgment dismissing respondent's claim for the money paid by him, and also to enter judgment dismissing the counterclaim of appellants, and that neither of the parties recover costs in the district court; appellants to recover costs on this appeal.

STRAUP, C. J., and McCARTY, J., concur.