## FRAMERICAN INDUSTRIAL DEVELOPMENT CORPORATION v. SPECHT.*

(District Court, W. D. Pennsylvania. February 24, 1923.)

**1. Sales ⊗⇒1(1)—Contract held not to have become effective because of non-performance of conditions precedent.**

**2. Contracts ⊗⇒317—Parties may agree on effect of default.**

Where the parties to a contract have expressly stipulated therein what the effect of a default shall be, the court can give it no other effect.

**3. Contracts ⊗⇒39—Contract is incomplete where one party has option to accept or reject bond given by the other.**

A contract is incomplete where its effectiveness is dependent on the giving of a bond by one party which shall be satisfactory to the other.

See, also, 297 Fed. 864, 871, 872.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., for plaintiff.
Watson & Freeman, John M. Freeman, and H. F. Stambaugh, all of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge. This case comes to the attention of the court at this time on statutory demurrer filed by the defendant, and raises the question as to whether the alleged agreement sued upon ever went into effect as a completed agreement.

The plaintiff and the defendant entered into an agreement wherein and whereby, among other things, the defendant, as seller, agreed to sell and deliver, and the plaintiff, as buyer, agreed to purchase and pay for, certain coal. By the terms of the writing covering the transaction, there were certain preliminaries to be completed by both parties before the contract became a completed contract. These preliminaries were: (1) The filing of a bond in the sum of $650,000 by the defendant as seller. (2) An advance cash payment of $500,000 by the plaintiff as buyer. (3) The establishment of a rotary credit covering 45 days' shipment, to be shipped by defendant under the contract, by the plaintiff as buyer.

The plaintiff contends that the writing executed by the parties was a complete contract, and that among the agreements which the defendant undertook to perform were the furnishing and delivery to the plaintiff of a certain bond for the faithful performance of the contract.

⊗⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Judgment affirmed 297 Fed. 862.

The defendant, however, contends that the giving of this bond was a preliminary to the contract becoming complete, and that, in addition to that, there were certain other conditions to be performed by the plaintiff, which were essential to the completed contract, namely, the payment of the sum of $500,000 by the plaintiff to the defendant, and the establishment by the plaintiff of a rotary credit to cover 45 days' shipment of coal to the defendant.

The defendant contends that the fourteenth and final paragraph of the agreement, attached to plaintiff's statement of claim as Exhibit A, is conclusive upon this question. This paragraph is as follows:

"Fourteenth. Unless the bond mentioned in the contract is delivered and accepted by the buyer, which acceptance must be in writing, and signed by the officer of the buyer who signed this agreement on its behalf, and unless the advance payment be made and the rotary credit be established, this agreement shall be of no effect whatever, and unless all these preliminaries are completed on or before September 17, 1920, this instrument shall be null and void."

The clause in connection with the giving of the bond, clause 11 of the contract, is as follows:

"Eleventh. The seller shall as soon as possible after the execution and delivery hereof, and before the advancement by the buyer of the said amount of five hundred thousand ($500,000) dollars, furnish the buyer a bond in the amount of six hundred and fifty thousand ($650,000) dollars, with good and sufficient surety, conditioned to the performance by him of all the terms, conditions, requirements, and provisions of this contract, and upon the exactness of representations made by the seller herein."

The clauses in relation to the payment of $500,000 and the establishment of a rotary credit are as follows:

"Eighth. The buyer shall immediately upon the delivery of one copy of this agreement, duly executed by the seller, with a bond satisfactory to the buyer thereto attached, advance to the seller on account of the purchase price of said coal one ($1) dollar per net ton, or five hundred thousand ($500,000) dollars in all; the buyer to be credited by the seller out of said advancement with the sum of one ($1) dollar on each and every net ton of coal delivered hereunder.

"Ninth. The buyer shall, as soon as possible after the delivery to it of a copy of this agreement, duly executed by the seller, with a bond satisfactory to the buyer, annexed thereto, establish in the Bankers' Trust Company of New York, a rotary credit to cover forty-five (45) days' payment of coal to be delivered hereunder, against which said rotary credit the seller may draw sight drafts each day to cover weight bills and invoices of coal shipped hereunder from day to day, less one dollar per net ton to be credited to the buyer out of the advancement of five hundred thousand ($500,000) dollars hereinbefore mentioned, which sight drafts with the railroad weight bills and invoices attached, the said Bankers' Trust Company with which the said rotary credit is to be maintained is hereby authorized to honor and pay. Adjustments of the said rotary credit shall be made by the buyer at the end of each and every month of the period covered hereby, except the last month of said period, during which the buyer shall maintain in the said rotary credit funds sufficient to cover payments of the remainder of the coal to be shipped hereunder."

It will be noted that this provision calls for a bond satisfactory to the plaintiff, as buyer, to be delivered to the buyer, with a copy of the agreement executed by defendant as seller, before the plaintiff shall be required to pay the $500,000 and establish a rotary credit.

[1] We are of the opinion that under the express terms of the fourteenth paragraph of this agreement, which, in our opinion, was intended for the benefit both of plaintiff and defendant, the contract never became effective as a completed contract, by reason of the fact that no bond was given by the defendant, as seller.

The plaintiff urges that the defendant cannot properly be permitted to take advantage of this clause of the contract, in setting up his own failure to deliver the bond in question. However, it is to be noted by this fourteenth paragraph that the giving of this bond is regarded as a preliminary, as well as the establishment of a rotary credit, and the payment of $500,000. Therefore it cannot be said that the minds of the parties have met until these preliminaries are completed. There is something yet to be done before the parties' minds have met, namely, the giving of the bond upon which the plaintiff has to pass judgment as to whether or not the bond is satisfactory, and the payment by the plaintiff of $500,000, and the establishment of a rotary credit by the plaintiff. Apparently the parties agreed upon the terms under which they would deal with reference to the coal, and then being fearful that the necessary conditions could not be completed to carry out the deal, they added the last and final clause to the contract, clause 14, which says:

"Unless all these preliminaries are completed on or before September 17, 1920, this instrument shall be null and void."

The plaintiff strongly urges that to permit this contract to become null and void, by reason of failure of the defendant in this case to give the bond, would be to allow him to take advantage of his own wrong, and that the courts would never construe a contract, so as to permit it to become null and void, for the benefit and to the advantage of a party failing to carry out the terms of the contract. We believe that this position is not tenable in all cases, and the case at bar is one of the cases where the parties themselves have determined that certain preliminaries must be carried out and completed before the contract to ship coal becomes effective. There is absolutely nothing wrong in so doing, and if any of the preliminary conditions are not carried out, of course, the minds of the parties have not met, and there is no contract.

[2] It is a well-established rule of the contracts, and all text-book writers agree, that it is entirely competent for the parties to a contract to provide for the discharge or annulment thereof, either by subsequent agreement or by incorporating provisions or conditions to that end in the original agreement. 3 Elliott on Contracts, 1868. The provision in the fourteenth paragraph is absolute that the contract shall be null and void unless all the preliminaries are carried out. It was not conditional on the option of either the plaintiff or the defendant. The mere happening of the event renders the contract null and void. The case of Mackey v. Ames, 31 Minn. 103, 16 N. W. 541, where a selling provision in a contract was involved, is exactly in point. The court says:

"The provision is absolute that this agreement—i. e., the whole agreement—shall be void. It is not a provision that the plaintiffs may, at their

option or election, abandon or dissolve the agreement, but that it shall, upon the occurrence of the specified contingency, become void, and therefore no longer binding upon either party."

The Supreme Court of Utah, also commenting on provisions of this character, said:

"The rights of both Rich and respondent must be measured by the terms of the contract. It was expressly stipulated therein what those rights should be in case of default of payment of the notes. * * * The parties, therefore, agreed upon what should result in case respondent failed to make the payments, namely, to apply the money as rent, and the return of the deed to Mr. Rich. It therefore could not have been contemplated that either party should resort to the courts to compel the other to carry out the other provisions of the contract. They had expressly provided for the breach upon the part of respondent, and Mr. Rich must be satisfied with the result stipulated for by him, and so must those who stand in his shoes, and who have no better rights than he had. * * * Where the parties themselves stipulate what the result of a breach of a particular contract shall be, the courts ordinarily have no authority to impose other consequences than those agreed upon." Foxley v. Rich, 35 Utah, 162, 99 Pac. 666.

[3] There is also another reason for holding that a completed contract was never entered into in this case, and those are the provisions of the eighth and ninth paragraphs of the contract, which provide that the agreement must be accompanied by a bond satisfactory to the buyer. Nowhere does the agreement fix the character of the bond which would be satisfactory to the buyer, and what was to be done as a good and sufficient surety. There is something left yet for the parties to do before their minds have entirely met on the subject-matter of the agreement. The plaintiff does not, by the contract, agree to accept, and it is not bound to accept a bond, even if the bond should be satisfactory to the court or a jury; but the plaintiff itself would be the sole judge of whether a bond to be given under this contract were a satisfactory bond.

The Supreme Court of Pennsylvania, in case of Singerly v. Thayer, 108 Pa. 291, 2 Atl. 230, 56 Am. Rep. 207, where the plaintiff agreed to furnish a passenger elevator "warranted satisfactory in every respect," held that this meant satisfactory to the buyer, and that his decision could not be questioned, so long as he acted in good faith. We think that in principle this case is like the case of Pennsylvania Lubricating Co. v. Wilhelm, 255 Pa. 390, 100 Atl. 93, where a sale was made in writing, "subject to approval of samples drawn from bulk," the seller refused to submit any sample, and the purchaser thereupon sued for damages for breach of contract. The court held that the existence of a binding contract was dependent upon the previous approval of the sample, and, as there has been no sample approved, there was no contract and the buyer could recover no damages. In considering this case, the Pennsylvania Supreme Court says:

"If a contract be invalid because incomplete, it is not made valid by the neglect or refusal of one party thereto to do that which would enable the other party at his option to render it complete. And if the contract be still invalid, there is no basis for recovery of damages because of defendant's neglect to furnish the sample in question."

To the same effect is the case of Hutchinson Baking Co. v. Marvel, 270 Pa. 378, 113 Atl. 433, where an offer was made to purchase a definite quantity of condensed milk "government standard," and the acceptance was "subject to approval of a five-barrel sample." In this case the Supreme Court said:

"It is suggested the proposed vendor was in default in not submitting his samples. That is so, but it does not alter the situation. 'Since there can be no contract without an offer and acceptance, the fact that the offerer by evasion prevents an acceptance of his offer will not cause a contractual relation to be established.' 13 C. J. 294."

We are of opinion that the sustaining of this statutory demurrer disposes of this whole action in favor of the defendant, and that the defendant is entitled to judgment in his favor, with costs.