**TUCKER et al. v. TRAYLOR ENGINEERING & MANUFACTURING CO.***

**No. 368.**

Circuit Court of Appeals, Tenth Circuit.

April 6, 1931.

G. C. Spillers, of Oklahoma City, Okl. (Chas. L. Yancey and Henry L. Fist, both of Tulsa, Okl., on the brief), for appellants.

A. J. Biddison, of Tulsa, Okl. (Harry Campbell, Valjean Biddison, and John H. Cantrell, all of Tulsa, Okl., on the brief), for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

On July 15, 1919, the appellee (defendant below) delivered to the Choctaw Portland Cement Company its written proposal to sell "One 42″x48″ Traylor Bulldog Self-aligning

Jaw Crusher," delivery f. o. b. factory. The proposal provided:

"The company will repair f. o. b. works where made, or furnish without charge f. o. b. its works, a similar part to replace any material of its own make which within one year after shipment is proven to have been defective when shipped, provided the purchaser gives the company immediate written notice of such defect; but the company shall not be liable for any delay or damages caused by such defective material, and no allowance will be made for repairs or alterations unless made upon the written consent or approval of the company.

"It is expressly understood and agreed that no officer or agent or salesman has any authority to obligate the company by any terms, stipulations or conditions not herein expressed; that all previous representation and agreements, either verbal or written, referring to the machinery and equipment which is the subject of this contract, are hereby superseded and cancelled; and that there are no promises, agreements or understandings outside of this contract."

Attached to the proposal were detailed specifications.

The cement company did not promptly accept; the defendant wrote several follow-up letters urging acceptance; on November 14, 1919, the cement company wrote and inquired how long defendant would need in which to make shipment, to which defendant replied. On December 23, 1919, the cement company wrote defendant to "please enter our order as given below for immediate shipment to Hartshorne, Okla., 1 42x48 Bull Dog Jaw Crusher." Neither this order, nor its cover letter, stated any price or specifications. The defendant in writing acknowledged the order and manufactured the crusher. It was shipped out in the early spring of 1920, and was examined while still on the cars. It was painted, and no defect was observed. It was then hauled a short way from the cars and left standing on a hillside, exposed to the weather, and is there yet. The buyer never attempted to use it; the cement company went into bankruptcy in February, 1921, and on January 15, 1929, nine years after delivery of the crusher, this action was brought in the state court by E. T. Tucker, who purchased this claim from the trustee in bankruptcy.

The cause was removed to the federal court and an amended petition filed, the trustee in bankruptcy joining as plaintiff. That petition alleges a contract of purchase, and that "no specific written contract was entered into in regard to the purchase and sale of said rock crusher, grizzley and elevator, but that certain letters and memoranda were written concerning the same, all of which are in the care, custody and control of the defendant, and for that reason plaintiff herein is unable to attach copies of such written memoranda as were made concerning the said transaction." It then alleges that one of the steel beams supporting the journal was cracked, and had been painted over so as to conceal the crack. There are three counts in the amended petition: (1) For breach of the implied warranty of fitness to do the work for which it was designed, for which judgment for $17,000, the full value of the crusher is prayed; (2) for entire failure of consideration, for which judgment is prayed for $14,500, the amount paid for the crusher; and (3) for fraud, in that defendant, having discovered the crack before shipment of the crusher, willfully concealed the same by paint for the purpose of defrauding, cheating, swindling, and wronging the buyer, for which alleged wrong $17,000 is prayed.

The evidence disclosed that the crack was not discovered until about 1923. No written complaint was made to the defendant about it for six more years, or until this suit was filed. The crack contained grouting or moulding sand, and the beam would have broken if the crusher had been used for large rocks. The crack could have been repaired for a nominal sum, or a new beam furnished. There is no evidence that, if the defective part had been repaired or replaced, the crusher would not have performed the work for which it was purchased. While the plaintiffs' evidence is unsatisfactory, and the defendant's evidence clear and direct, there was evidence from which a jury might have found that the crack existed when the crusher left the factory. At the close of all the evidence, the trial court directed a verdict for the defendant, on the ground that the contract measured the rights of the parties as to defective parts, and that there was no evidence of fraud.

The plaintiffs complain that the written proposal, the order of the cement company for the crusher, and the other correspondence, were improperly admitted in evidence. It is claimed that none of these documents was properly identified. It was necessary to use copies, and in some instances copies of copies; but the absence of the originals or the original copies was satisfactorily explained; the correspondence bears internal evidence of its genuineness; it is a connected

chain, and we have not the slightest doubt of its integrity. But in addition to that, much of it is immaterial. That the cement company bought this crusher is the basis of plaintiffs' claims; that its purchase was accomplished through the order of December 23 admits of no doubt; the order of December 23 carried no price, and obviously refers back to some prior negotiations, or it is meaningless. The only document or bit of evidence produced that can supply the price necessary to make sense out of the December 23 letter is the proposal of July, 1919. A carbon copy of that proposal was positively identified by the individual who handed it to the cement company; the plaintiffs allege that they do not have the original. The proposal of July, 1919, was properly admitted, and it is the proposal accepted by the cement company in December.

The first count is based upon the breach of an implied warranty of fitness. The doctrine is not applicable here for the reason that the only thing complained of is a defective part, and the parties have contracted as to their respective rights and obligations in case of such defective part. There is divergence of opinion as to whether the presence of an express warranty necessarily excludes the existence of an implied warranty of a different character, and which supplements, but does not contradict, the express warranty. Dewitt v. Berry, 134 U. S. 306, 10 S. Ct. 536, 33 L. Ed. 896; Loxtercamp v. Lininger Imp. Co., 147 Iowa 29, 125 N. W. 830, note 33 L. R. A. (N. S.) 501, on the topic "Does express warranty as to quality exclude implied warranty as to quality?"

It is clear, however, both upon principle and authority, that the doctrine of an implied warranty cannot be invoked to render nugatory a provision of a contract. Williston, in his work on Contracts, § 993, says: "In some cases it has been held that an express warranty in a contract to sell or sale necessarily excludes any implied warranty. If express warranties in a contract are in their nature inconsistent with the warranties which would have been implied had none been expressed, it would indeed be violating the intention of the parties to imply warranties, but the principle should extend no further."

Judge Walter H. Sanborn states the rule as follows: "An express warranty of one of the qualities of an article excludes an implied warranty of other qualities of a similar nature. The exaction or acceptance by the purchaser of personal property of a warranty of one quality raises a conclusive presumption that he did not desire, or could not secure, or the parties agreed that he should not have, the warranty of others of the same character. Benjamin on Sales (7th Am. Ed.) 672; Carleton v. Lombard, Ayres & Co., 72 Hun, 254, 260, 25 N. Y. S. 570; Jackson v. Langston, 61 Ga. 392; Baldwin v. Van Deusen, 37 N. Y. 487, 489; Deming v. Foster, 42 N. H. 165, 175; Dewitt v. Berry, 134 U. S. 306, 313, 10 S. Ct. 536, 33 L. Ed. 896; Seitz v. Brewers', etc., Machine Co., 141 U. S. 510, 517, 12 S. Ct. 46, 35 L. Ed. 837; Buckstaff v. Russell & Co., 79 F. 611, 615, 25 C. C. A. 129, 133; International Pavement Co. v. Smith, etc., Machine Co., 17 Mo. App. 264, 269; Chandler v. Thompson (C. C.) 30 F. 38, 46; J. I. Case Plow Works v. Niles & Scott Co., 90 Wis. 590, 604, 63 N. W. 1013; McGraw v. Fletcher, 35 Mich. 104, 106; Mullain v. Thomas, 43 Conn. 252, 254. There was no implied warranty of the fitness of the pump to do the work for which pumps of its nature are designed, and there was no breach of the express warranty contained in the contract." Reynolds v. General Electric Co. (C. C. A. 8) 141 F. 551, 556.

The Uniform Sales Act expresses the rule as follows: "An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith." Section 15 (6).

The sole complaint of plaintiffs in this case is that a part of the crusher was defective when shipped. By their written contract the parties have agreed that in event of such defect the obligation of the defendant is limited to repairs or replacement of the defective part for a period of one year. That is the agreement the parties made to cover the precise contingency which has occurred, and there is no power in the courts to change it. Stone, Sand & Gravel Co. v. United States, 234 U. S. 270, 34 S. Ct. 865, 58 L. Ed. 1308; Kansas Union Life Ins. Co. v. Burman (C. C. A. 8) 141 F. 835, 849; Morris & Co. v. Power Mfg. Co. (C. C. A. 6) 17 F.(2d) 689; Framerican Industrial Development Corp. v. Specht (D. C.) 297 F. 858, affirmed (C. C. A. 3) 297 F. 862; Foxley v. Rich, 35 Utah, 162, 99 P. 666; Moline Plow Co. v. Wilson, 74 Okl. 89, 176 P. 970; Moline Plow Co. v. Hooven, 76 Okl. 250, 185 P. 102.

This reason being ample, there is no occasion to discuss the questions of whether the sale was one of a definite described article under its trade-name, Braden v. Mountain Iron & Supply Co. (C. C. A. 8) 32 F.(2d) 244, or whether such warranty is breached

by a defective part in a machine otherwise suitable for the purpose intended.

Not having given written notice of this defective part until six years after the discovery of the defect, and the defendant's obligation as to defective parts being limited to one year, the plaintiffs cannot recover on the first count.

For the same reasons, there can be no recovery on the second count. There are additional reasons. The second count alleges that the crusher was worthless; that there was therefore an entire failure of consideration; the relief prayed for is the return of the money paid. But there is no evidence that the machine was worthless. The evidence developed that there was a defective part which must be repaired or replaced before the crusher would successfully operate. But that does not prove that the crusher was worthless; an automobile cannot be operated successfully with a defective fan belt; but proof of a defective fan belt does not prove that the automobile is worthless; nor does it prove that the automobile is not fit for the purposes for which it was designed. Furthermore, the plaintiff did not tender back the crusher; on the contrary, it was sold by the trustee in bankruptcy. A buyer loses his right to rescind and recover the price paid by continuing to treat the property as his own. Shappirio v. Goldberg, 192 U. S. 232, 24 S. Ct. 259, 48 L. Ed. 419; McLean v. Clapp, 141 U. S. 429, 12 S. Ct. 29, 35 L. Ed. 804; Kunglig Jarnvagsstyrelsen v. Bank (C. C. A. 2) 20 F.(2d) 307; Watchorn v. Roxana Petroleum Corp. (C. C. A. 8) 5 F.(2d) 636.

The third count sounds in tort. The plaintiffs not only alleged, as in the other counts, that the part was defective when shipped, but further alleged that defendant knew it was defective, and deliberately concealed the defect with paint with the intent of defrauding, cheating and swindling the plaintiffs. If there is evidence to sustain such serious charges, the contract is no defense. But the record is barren of any proof thereof. There is not even room for a suspicion that such was the fact. The suggestion is an utterly improbable one. The defect was such that it would be discovered as soon as the crusher was used; the defendant had contracted to repair or replace defective parts within a year; no sane person would deliberately ship out a defective part which would have to be promptly repaired or replaced. But a finding of fraud cannot be bottomed on even plausible suspicion. Fraud is never presumed; it must be established by clear, satisfactory, and convincing evidence. Raines v. Ligon (C. C. A. 10) 37 F.(2d) 633, and cases there cited. If the circumstances are as consistent with honesty as with dishonesty, the inference of honesty must be drawn United States v. Mammoth Oil Co. (C. C. A. 8) 14 F.(2d) 705, decree affirmed, 275 U. S. 13, 48 S. Ct. 1, 72 L. Ed. 137. The plaintiffs rely upon meager circumstances to arrive at the inference that the part was defective when the crusher was shipped; it is not permissible to build upon that inference the further inference that defendant knew of the defect. United States v. Mammoth Oil Co., supra; Looney v. Metropolitan Railroad Co., 200 U. S. 480, 488, 26 S. Ct. 303, 50 L. Ed. 564. The third count fails for lack of proof.

The judgment is affirmed.