**ORRISON et al. v. FERRANTE et al.**

No. 863.

Municipal Court of Appeals for the
District of Columbia.

Argued March 13, 1950.

Decided April 20, 1950.

Jesse H. Chessin, Washington, D. C., for appellant Orrison.

W. Byron Sorrell, Washington, D. C., for appellant Chenault.

William H. Brain, Washington, D. C., Joseph C. Turco, Washington, D. C., on the brief, for appellee Ferrante.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This appeal is from two judgments of the Municipal Court, the first in favor of the purchaser of a washing machine against a dealer who sold her the machine, and the other, based upon a third-party claim, in favor of this dealer against another dealer who had sold the machine to him. The dealer who sold to the purchaser also filed a third-party claim against the manufacturer of the washing machine, but no judgment either for or against such manufacturer was given. The trial court found that both dealers were liable on express as well as implied warranties. Separate appeals have been filed by the two dealers.

The washer was sold originally in June 1947. The purchaser, Mrs. Ferrante, obtained it through a friend or relative from the dealer, Orrison. She did not see the dealer herself, and it was delivered, crated, to her home. This dealer who sold to Mrs. Ferrante was a hardware merchant who dealt in washing machines and similar appliances and who obtained this particular machine from another dealer in Maryland, Chenault, who was a franchise dealer for the Young washing machine but whose franchise did not include the right to sell to customers in Washington. The machine was delivered to Mrs. Ferrante, and she paid the full purchase price in cash. Both dealers made a profit. The machine was accompanied by a guarantee of the manufacturer which is set out in full in the margin.[1] She used the machine for about a week and then "a cap on top" broke. She telephoned the dealer who had sold to her. He told her that the second dealer would service the machine. The second dealer told her in turn that she should call the first dealer. Not getting satisfaction from either, she bought a "Young" cap elsewhere and installed it. The washing machine ran for about two weeks more and then, she testified, "it stopped completely and you could see the damage in the gear." This was the only evidence as to the extent of the damage. She then telephoned both dealers repeatedly for service and each referred her to the other.

About five months later, in November 1947, the purchaser wrote to the manufacturer in Massachusetts complaining that she had gotten no service on the machine. Correspondence followed, the manufacturer first asking the name of the dealer who had sold her the machine, and then when such name was finally supplied stating that he was not one of their authorized dealers. The home office finally turned the matter over to its then District of Columbia distributors.

The machine not having been repaired, approximately seven months after the original sale, in January 1948, the purchaser sued both the first dealer and the manufacturer but obtained service only on the first dealer Orrison. This suit was for the full

[1]

"Guarantee
Young Washing Machine

"This certifies that the Young Washing Machine recorded below has been thoroughly inspected and tested and found up to standard in every way. It is hereby guaranteed for one year against defects in workmanship or material and the undersigned company agrees to replace free of charge any part or parts proving defective during the life of the guarantee, ordinary wear, accident or misuse expressly excepted.

"Replacements will be made f. o. b. our factory, upon return of defective part and no local service or repair charges will be allowed.

"This machine is designed for private family washing and this guarantee does not apply if used for any other purpose.

"To Be Filled In By Dealer Selling This Machine:
"Sold by: /s/ C. E. Orrison
Sold to: /s/ M. Ferrante
Date: 6/21/47
Model—W. D. E.

"Serial No. 28503
"Customer Keep This Card
The Young Corporation
Fall River, Massachusetts"

purchase price of the machine, mentioned the written guarantee, and alleged her frequent efforts to have the washing machine repaired. Subsequent to the filing of the suit the washing machine was obtained from the purchaser by Orrison for the account of the manufacturer's distributors in the District of Columbia (who had been changed since the original transaction). The men who obtained the machine told the purchaser they were taking it for repairs and gave her a receipt for it. In June 1948 the washing machine having been repaired was offered back to the purchaser by the distributors, but she refused to accept it saying that she had purchased another washing machine. Thereafter Orrison answered and filed a third-party claim against Chenault, the manufacturer and the Washington agents of the manufacturer. He obtained service on all third-party defendants, but the suit against the manufacturer's agents was dismissed and no appeal from that dismissal has been taken.

The only other evidence bearing upon purchaser's claim was the testimony of Chenault, corroborated by an independent dealer, that it is a custom in the electrical appliance business, including washing machines, for the dealer who sells the machine to the customer to give minor services on the machine; that as between dealers no service is rendered since the machine is guaranteed by the manufacturer and if not in proper working condition redress should be sought from the manufacturer; also that Chenault was the Hyattsville, Maryland, representative of the manufacturer and that it was the obligation of the local franchise holder to give service to the machine if the machine is purchased from them.

Orrison complains of the judgment against him on the principal grounds that he was not liable on the express warranty of the manufacturer, that he was not liable on an implied warranty, that the purchaser waived any warranty as far as he was concerned by submitting the machine for repair, and that the measure of damages adopted by the trial court was erroneous. He also assigns as error the failure of the trial court to render any finding or judgment as to the manufacturer.

Third-party defendant Chenault adopts these assignments of error and also complains that in any event no judgment should have been rendered in favor of Orrison against him.

■ Although the present suit was filed prior to the return of the machine, it had been returned prior to the filing of answers by Orrison and Chenault, and there was received in evidence correspondence between Orrison and the manufacturer, as well as evidence regarding the tender of the machine back to the purchaser after its repair and her refusal to accept it because of a replacement purchase. We believe, therefore, that there should be applied the provisions of rule 15(b) of the Municipal Court made applicable to "B" cases by rule 10 of such rules, providing that when issues not raised by the pleadings are tried by express or implied consent of the parties they shall be treated in all respects as if they had been raised by the pleadings and failure so to amend does not affect the result of these issues.

■ We have concluded that both judgments must be reversed. Whatever may have been the original rights of the parties, they were changed by the redelivery of the washing machine to the agent for the manufacturers. The evidence is subject only to the construction that this redelivery was not in the nature of a rescission of the original contract but was for the purpose of repair and that this was understood by all parties, including the purchaser. The machine itself is not now in the possession of any of the parties against whom judgment was given. It is in the possession of the agents of the manufacturer, yet no judgment either for or against the manufacturer was given.

■ We are clear likewise that Orrison was not liable on an express warranty. The mere resale of an article to which the manufacturer has affixed his warranty is not sufficient in itself to constitute an adoption of the warranty by the seller for there must be in addition some affirmation of fact

or promise by the seller himself which tends to induce the buyer to purchase the article.[2] We are of the opinion, furthermore, that the affixing of Orrison's name opposite the words "sold by" on the express warranty was not an adoption of that warranty by Orrison. This was totally different in effect from the endorsement of a promissory note. It was clearly only the identification of the seller.

■ Originally Orrison may have been liable upon an implied warranty, particularly in view of the provisions of the Uniform Sales Act, D.C.Code 1940, § 28—1101 et seq., adopted in the District of Columbia in 1937 and of the testimony that in the electrical appliance business it is the custom that the dealer who sells the machine to the customer shall give minor services on the machine.[3] Here, however, the evidence is clear that the customer made the original repairs herself and the machine then worked, but that thereafter the machine "stopped completely and you could see the damage in the gear." This does not indicate the need for a minor repair but rather for a general overhauling and possible replacement of parts. Against such defective materials or workmanship there was no implied warranty by the dealer Orrison. This would have been inconsistent with the written express warranty of the manufacturer who agreed to replace such parts.[4]

■■ Moreover, we believe that in the present posture of the case the measure of damages adopted by the trial court was erroneous. The Uniform Sales Act provides that a buyer, where there has been a breach of warranty, may at his election either rescind the sale and, if the goods have already been received, return them or offer to return them and recover the price, or keep the goods, in which event the measure of damages for breach of warranty is the loss directly and naturally resulting in the ordinary course of events from the breach of warranty.[5] In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty.[6] No evidence on this point was offered. Here, as already recited, the purchaser did not tender back the washing machine as a rescission; she kept it for nearly ten months and when it was returned it was clearly for the purpose of repair. A buyer loses his right to rescind and recover the price paid by continuing to treat the property as his own.[7]

■ Our conclusion is that there is no evidence to support the judgment of Orrison against Chenault, and that judgment must be reversed. As to the judgment of Mrs. Ferrante against Orrison, the judgment is reversed with directions to grant a new trial. At such new trial the court below is also directed to render judgment as between Orrison and the third-party defendant, the Young Corporation. It is, of course, open to Mrs. Ferrante to continue to attempt service of process against the Young Corporation, against which service was obtained by Orrison.

Reversed and remanded for further proceedings in accordance with this opinion.

2. 46 Am.Jur., Sales, § 313, p. 495; Cochran v. McDonald, 23 Wash.2d 348, 161 P.2d 305; Wallace v. McCampbell, 178 Tenn. 224, 156 S.W.2d 442.

3. Code 1940, 28—1115. Subsection (5) of that section provides: "An implied warranty or condition as to the quality or fitness for a particular purpose may be annexed by the usage of trade."

4. Code 1940, 28—1115(6); Tucker v. Traylor Engineering & Manufacturing Co., 10 Cir., 48 F.2d 783; People's Light Co. v. Rathbun-Jones Engineering Co., 5 Cir., 218 F. 167.

5. Code 1940, 28—1507(6).

6. Code 1940, 28—1507(7).

7. Tucker v. Traylor Engineering & Manufacturing Co., 10 Cir., 48 F.2d 783.