TREMONTON INV. CO. v. HORNE.

No. 3709.   Decided December 2, 1921.   (202 Pac. 547.)

1.  VENDOR AND PURCHASER—PURCHASER RELIEVED FROM FORFEITURE WHEN NONPAYMENT DUE TO VENDOR'S INABILITY TO PROCURE AND CONVEY TITLE. Under a contract for the sale of land providing for forfeiture of the purchaser's rights on failure to comply with the contract for 60 days, where the vendor had no title but was only a vendee or optionee of a larger tract embracing that sold, and was financially unable to complete the purchase of the premises, the purchaser will be relieved from a forfeiture of the contract on account of his failure to make monthly payments, in view of Comp. Laws 1917, § 6579, authorizing any defense, either legal or equitable, to be interposed, especially where the purchaser did not intend to forfeit his contract, but only failed to make the payments becaused he feared his vendor could not deliver title.

2.  VENDOR AND PURCHASER—PURCHASER WITH NOTICE IN NO BETTER POSITION TO INSIST ON FORFEITURE THAN SELLER. Where plain-

tiff and its predecessors in interest when the title to land was acquired had notice of the right of one to whom a vendee or optionee had contracted to sell a part of the land, and such person was occupying the premises with his family plaintiff was in no better position to insist upon a forfeiture of the contract for failure to make monthly payments than the optionee whose rights they had also acquired.

3. VENDOR AND PURCHASER—COURT SHOULD REQUIRE PURCHASER TO DO EQUITY BY DEPOSITING AMOUNT DUE IN RELIEVING HIM FROM FORFEITURE. In an action to recover the possession of land from one having a contract of purchase and in default in making monthly payments thereunder, the court, before relieving him from a forfeiture and dismissing the complaint, should have required him to do equity by depositing the amount due, and which he alleged he was ready and willing to pay, with the clerk of the court for plaintiff's use and benefit.

Appeal from District Court, First District, Box Elder County; *A. A. Law,* Judge.

Action by the Tremonton Investment Company against W. R. Horne. From a judgment of dismissal, plaintiff appeals.

REMANDED, with directions.

*Young & Davis,* of Brigham City, for appellant.

*Alva D. McGuire,* of Tremonton, for respondent.

GIDEON, J.

In this action plaintiff seeks to recover possession of certain real property situate in Box Elder county, this state. The complaint contains allegations of ownership, right of possession in the plaintiff, wrongful detention by the defendant, and damages usual in actions of ejectment. The defendant admits title of the premises in plaintiff, denies the right of possession in the plaintiff or its predecessors in interest, and denies that the defendant unlawfully withholds posses-

sion.   The answer denies all other allegations of the complaint.

For an affirmative defense defendant pleads and relies upon a contract for the purchase of the premises, entered into between the defendant and one Walter Romney.   That contract is dated September 26, 1919.   It is therein provided that Romney agrees to sell, as party of the first part, to the defendant, as party of the second part, the real property described in the complaint for an agreed sum of $1,750, payable $100 upon execution of the contract and $30 or more on the 5th day of each month thereafter until paid, the deferred payments to draw interest.   The defendant, by the terms of the contract, was obligated to pay the taxes upon the premises and was entitled to the possession of the same.   The contract has this further provision:

"Upon full compliance with the terms of said agreement, first party does hereby agree to convey to said second party by good and sufficient warranty deed, free of all incumbrances whatsoever, title to said above-described property; upon failure of second party to comply with the terms of said contract and for 60 days thereafter, said first party shall be no longer under legal obligation to convey to said second party said above-described property, and all payments heretofore made on said contract shall be forfeited as liquidated damages, time being of the essence of this contract."

It is further alleged, as part of the affirmative defense, that the premises contracted to be sold defendant constitute only a part of what is known as Fell's addition to the city of Tremonton, in Box Elder county, this addition consisting of about eight acres of land; that at the date of the contract Romney represented to defendant that he had purchased and was the owner of said addition and intended to begin improving the same by constructing sidewalks and buildings thereon; that within a few weeks thereafter said Romney entered into contracts with divers other persons for the sale of lots in said addition and for the erection of residences, and began the construction of sidewalks and three residences in the addition.   It is then alleged that in the month of February, 1920, work was suddenly stopped on the buildings and the parties who had entered into contracts with Romney for the

construction of buildings advised the defendant that Romney was virtually bankrupt, could not complete the buildings, and that they were alarmed lest they would lose the money they had advanced, and that Romney was insolvent; that the defendant made inquiry to ascertain the truth or falsity of these reports, and learned that Romney was not the owner of the land in question but was the optionee or vendee under a contract with one Henry T. McEwan, who was the owner of the premises, and that at that time Romney was in default in his payments to McEwan and was unable to pay the claims of materialmen and laborers, and that mechanics' lien had been filed against the buildings under construction; that defendant, fearing and believing that Romney was insolvent, and fearing lest any further sums paid by him while Romney was in such financial condition would be lost, for that reason, withheld any further payments on his contract "until the same could be safely made to some person in position to carry out the terms of said contract."

The court made findings in which the facts alleged in the affirmative defense are, to all intents and purposes. incorporated.   Among other things, the court found that on September 18, 1919, Henry T. McEwan gave to one Walter Romney an option to purchase   certain real property, of which the premises in question are a part; that on the 26th day of the same month said Romney entered into a written agreement with defendant Horne for the sale of a part of said premises upon the terms as alleged in the answer; that an initial payment of $100 was made by the defendant and the monthly payments regularly made up to March 5, 1920; that on or about March 8, 1920, the defendant addressed a letter to Romney inclosing $20 and advising that the balance of $10 of the monthly payment would be made on April 5th, when the April installment became due.   Romney accepted the $20 and made no objection to the terms imposed.   The defendant failed to make any payment on April 5th, either of the balance due upon the March installment or the April payment. He likewise failed to make the payment due May 5th.   The court also found, and it appears from the testimony, that the

attorney for Romney (and this attorney was also interested in the option held by Romney from McEwan for the purchase of the premises), during the latter part of the month of May, called upon defendant where he was at work in the city of Tremonton and inquired the reason for withholding payments. In answer to that inquiry on the part of the attorney, the defendant replied that he had been advised to withhold payments on account of the financial condition of Mr. Romney, but that he was prepared to make payment in full as soon as he could be assured that Romney's financial condition was such that he could make the payments without fear of losing the same. The attorney made no statement in reply to that answer, interposed no objection, and did not by any words indicate that the reasons assigned by the defendant for withholding payments were not satisfactory. In the language of the findings, "his attitude was such that the defendant was, under the circumstances, justified in believing that at any future date within a reasonable time thereafter, if he tendered the amount due, that it would be accepted." The court further found, and so it appears from the testimony (although the exact date is not given), that David Holmgren, H. P. Waples, and Alma Theurer, the immediate predecessors of the plaintiff company purchased the property in question from McEwan; that on the 9th day of July these same parties acquired the option held by Romney for the purchase of the premises from McEwan; that said purchasers on October 7, 1920, conveyed their interest in the property to the plaintiff company. The court further found that on July 26, 1920, the owners of the premises notified the defendant to vacate said premises and that on that date the defendant tendered to them the full amount of all payments then due upon the contract, which tender was refused; that ever since that time, and at the time each payment became due, the defendant had tendered the plaintiff, or its immediate predecessors in interest, the amount due, and the offers had been refused.

The court concluded, as matter of law, that the plaintiff was not entitled to judgment, and dismissed the complaint

at plaintiff's cost.  Plaintiff appeals, and by assignments of error attacks both the court's findings of fact and conclusions of law.

It appears from the record that the immediate predecessors in interest of plaintiff company had acquired the title, or at least some interest, in this property as early as the latter part of April, 1920.  The defendant testified that either on the last day of March or the first day of April, 1920, he had an interview with the purchasers at their request, or at the request of one of them, in which they discussed the arrangements for the completion of the three buildings then in the course of construction on the said addition.  At that interview inquiry was made of the defendant if he had his contract with him.  He advised them that he did not; that he had misplaced it and could not find it at that time.  The defendant also testified that in that conversation he spoke of completing those buildings and stated that at least part of his wages could be applied as payment on the contract price for the premises occupied by him (being the premises in controversy).  Nothing came of that interview between the defendant and the then owners of the premises.  The defendant is a carpenter by occupation.  No denial of that interview or the substance of what was discussed is found in the record. It seems to be admitted, at least it is abundantly shown by the testimony, that the plaintiff and the immediate predecessors in interest of plaintiff knew of the contract between Romney and the defendant.  One or two of the present owners of the plaintiff company, and who were the predecessors in interest of plaintiff, testified that on one or two occasions the defendant had stated to them that his contract, referring to the one with Romney, was void.  The inference seemed to be that the defendant recognized that he had failed to make the payments as provided in the contract and therefore had lost his rights under the contract.  The defendant denied that he had made any such statements at the dates testified to, or at any time.  Even by the terms of the contract it was in full force and effect at the date of the interview between the defendant and the three owners of the property on or about

April 1st. The terms of the contract provide that the defendant should have 60 days from the date any payment became due within which to make that payment before a forfeiture of his rights would take place.

The question presented, therefore, in its final analysis, is whether the court could or should relieve the defendant from the forfeiture provided in the contract, in view of the facts and circumstances surrounding the relationship of the parties as shown by this record.

There was at least some evidence tending to prove that Romney was not able to complete the purchase of the property from McEwan and would not be able to deliver title to the defendant, even though the latter continued to make payments as provided by the terms of his contract. In fact, it appears that as early as April, 1920, when admittedly the contract between Romney and the defendant was still in full force and effect, the property had been sold to the predecessor in interest of plaintiff. It should be borne in mind that the premises described in the contract between Romney and the defendant included only a part (in fact a small part) of the premises in the contract given by McEwan to Romney. Romney was not able to meet the payments due under his contract with McEwan merely by the defendant continuing to make the monthly payments provided for in his contract. This is not, therefore, a case in which the defendant might have had the right to demand that his payments should be applied in removing any incumbrance upon or curing any defect in the vendor's title.

If, in fact, Romney was insolvent or otherwise financially unable to complete the purchase of the premises contracted for by him from McEwan, ought the defendant to be compelled to keep on making the payments as in his contract specified or otherwise lose the rights acquired by him? The district court was of the opinion that he should not. We agree with that court.

Let it be conceded that the law is that it is no defense by a purchaser to an action for specific performance on the part of a seller or vendor of land that the title was defective at

the date of the contract of sale, if the title has been acquired or the defect removed at the date when the contract is to be completed and the premises conveyed. We are not dealing with a state of facts of that kind. Take the status of these parties, however, and let us suppose that Romney had brought suit against the defendant to recover one or more of the monthly payments as the payments fell due under the terms of the contract, and that the defendant had answered as he has answered in this case, and had been able to establish that Romney had only a contract for the purchase of the property included in and as a part of a larger tract, and that it was shown that Romney was in default to the owners of the premises, could it be successfully maintained that the defendant would have no defense to that action?

In this jurisdiction a defendant may interpose any defense either legal or equitable, or both. Comp. Laws Utah 1917, § 6579. As indicated elsewhere in this opinion, there is no question that the plaintiff and its predecessors in interest at the time title to the premises was acquired from McEwan were not fully advised as to the interest the defendant had in these premises. He was occupying the premises at the time with his family, and his testimony is without dispute that at the interview had between the defendant and the owners of the property on or about April 1st reference was made to defendant's contract. The plaintiff is therefore in no better position to insist upon a forfeiture than Romney would have been if he were plaintiff in this proceeding.

The principle of law which, in the judgment of the       2 court, should control in cases such as the one under consideration is concisely and clearly stated in Pomeroy, Specific Performance, § 379:

"The fundamental principle upon which the answer to the question turns is the following: Where a contract depends upon a condition precedent; or, in other words, where the intention of the parties is that no right shall vest until certain prescribed acts are done or omitted, or unless certain prescribed acts are done or omitted, at or before a specified time, then equity will not relieve against a breach of such precedent condition, for no court has the power to make a new contract for the parties which shall confer rights where

no rights at all originally existed. But if a contract contains a condition subsequent; or, in other words, if the intention of the parties is that the rights under the agreement shall vest at once upon its conclusion—subject, however, to be defeated or ended upon a nonperformance of the provision which constitutes the subsequent condition, or its nonperformance at or before a specified day—then equity, by virtue of its general jurisdiction over penalties and forfeitures, has power to relieve the defaulting party from the loss or forfeiture caused by his breach of this subsequent condition. This power of relief would even more certainly exist when the breach was a failure, not to do the thing at all, but merely to do it at or within the time stipulated by the contract. It is therefore held in a great number of cases that the forfeiture provided for by such a clause as the one described above, on the failure of the party to fulfill at the proper time, unless such failure is intentional, or cause an injury to the other party which cannot be compensated, will be disregarded and set aside in equity; and the defaulting party, performing, or being ready and willing to perform, at a subsequent time, will be allowed to enforce, the contract notwithstanding his delay."

The foregoing is quoted and approved in *Wheeling Creek Gas, Coal & Coke Co.* v. *Elder*, 54 W. Va. 335, 46 S. E. 357.

It was said by this court in *Kohler* v. *Lundberg*, 54 Utah, at page 343, 180 Pac. at page 592: '

"Courts of equity are loth to enforce forfeiture, especially when the refusal to do so, as in this case, gives to all parties to the agreement every right to which they are entitled, and thus in no way works a hardship upon any one."

See, also, *Cue* v. *Johnson*, 73 Kan. 558, 85 Pac. 598; *Auxier* v. *Taylor*, 102 Iowa, 673, 72 N. W. 291; *Price* v. *Immel*, 48 Colo. 163, 109 Pac. 941; *Opejon* v. *Engebo*, 73 Wash. 324, 131 Pac. 1146; *Maffet* v. *Oregon & C. R. Co.*, 46 Or. 443, 80 Pac. 489.

The court is not basing its conclusions upon the contention that Romney, by accepting without objection, in March, 1920, a less amount than that named in the contract, waived the right to insist upon future forfeiture. We base our conclusions upon the equitable powers of the court to relieve the defendant from the effect of the forfeiture provided for in the contract under all the facts and circumstances in this case, and especially so as no one is being deprived of any right or property to which he is clearly and legally entitled.

Moreover, it appears from all the testimony that the defendant did not intend, by failure to make monthly payments, to forfeit his contract. He only failed to make the monthly payments because he feared Romney would not be able to deliver title. Such fact is an additional reason why a court of equity should relieve the defendant from the forfeiture under the contract.

As the defense interposed, and upon which in our judgment the court rightfully refused to grant any relief, is an equitable defense, the court, in the exercise of its equitable powers, should have required the defendant to do equity. It is alleged, and the court found, that the defendant was ready and willing to pay all amounts due under the terms of the contract and that the same had been declined or refused by the plaintiff. Nevertheless the defendant should be required, before denying any relief to the plaintiff, to deposit the amount with the clerk of the court for the use and benefit of the plaintiff.

The cause will therefore be remanded to the district court of Box Elder county, with directions to give the defendant the right and privilege, within a reasonable time to be fixed by the court, to deposit with the clerk of the court or to pay to the plaintiff all amounts due by the terms of his contract, and upon compliance with that order to dismiss the complaint; otherwise, to grant plaintiff judgment for the possession of the property. Neither party will be allowed costs on this appeal.

CORFMAN, C. J., and WEBER, THURMAN, and FRICK, JJ., concur.