OWENS v. NEYMEYER et al.

No. 4004. Decided December 5, 1923. (221 Pac. 160.)

1. VENDOR AND PURCHASER—OFFER TO RESTORE POSSESSION CONDITION PRECEDENT TO PURCHASER'S ACTION TO RESCIND AND RECOVER PURCHASE PRICE. Generally a purchaser as a condition precedent to the right to maintain an action to rescind and recover the purchase price, must offer to restore possession to seller.

2. VENDOR AND PURCHASER—PURCHASER HELD NOT ENTITLED TO RESCISSION AND TO RECOVER PURCHASE PRICE, ON GROUND THAT VENDOR MISREPRESENTED THAT HE WAS "OWNER." Where vendor, at time of purchaser's action to rescind and recover purchase price, was able and willing to convey to purchaser an indefeasible title to the land and to transfer water stock on the books of the water company, on payment of the full purchase price, under contract requiring him to convey the land in fee simple "by warranty deed when payment shall have been made by said purchaser of a consideration hereinafter stated, and the covenants hereinafter contained shall have been performed," and where the contract did not require vendor to have fee-simple titl when the contract was executed, the mere fact that at such time the legal title was in a third person as security for vendor's indebtedness to third person, and that vendor at such time represented himself to be the owner, did not entitle purchaser to rescission or recovery of purchase price, since vendor was "owner" at that time, and was in a position to comply with the contract at the time of the action.

3. APPEAL AND ERROR—WHERE DIFFICULTY AROSE OUT OF MISUNDERSTANDING, SUPREME COURT WILL REMAND CAUSE TO ENABLE PARTIES TO ADJUST DIFFICULTY AND MODIFY CONTRACT. In purchaser's action to rescind contract and recover purchase price, in which vendor counterclaimed for adjudication that purchaser had forfeited his rights under contract and payments thereunder by default in payment of purchase-money installment, taxes, and water assessments, the Supreme Court, in holding that purchaser was not entitled to rescind, will not render a judgment, where it appears that the difficulty between the parties arose out of a misunderstanding, but will remand the cause

to permit the parties to adjust the matter and make such modifications of the contract as they may deem necessary, with directions to dismiss purchaser's complaint and permit the parties to pursue their legal rights in the event of their failure to agree.

4.  Costs—Supreme Court, in Remanding Case to Permit Parties to Adjust Misunderstanding, will Require Each Party to Pay One-half of Costs.  Where dispute between purchaser and vendor's assignee was the result of a misunderstanding, the Supreme Court, in reversing judgment for purchaser in action to rescind and recover purchase price, and remanding the cause to permit the parties to adjust the matter and make necessary modifications in the contract, will require each to pay one-half of the costs.

Appeal from District Court, Fifth District, Millard County; *Wm. F. Knox,* Judge.

Action by Edward M. Owens against Gustave A. Neymeyer and another. Judgment for plaintiff, and named defendant appeals.

Reversed and Remanded, with directions.

*J. A. Melville, Jr.,* of Salt Lake City, for appellant.

*A. L. Larsen,* of Delta, and *T. M. Ivory,* of Fillmore, and *Soule & Spalding,* of Salt Lake City, for respondent.

FRICK, J.

On February 28, 1922, plaintiff commenced this action in the district court of Millard county to rescind a contract entered into between himself and the defendant Neymeyer for the purchase of certain lands in said county, and to recover back the sum of $4,000 which had been paid on the purchase price and for damages.

The action is predicated on alleged misrepresentations made by Neymeyer at the time the contract was entered into, respecting the ownership of or title to the land.

The defendant Kabiser was made a party to the action upon the alleged ground that he claimed some interest in the land. He made default, and at the trial it appeared that he at that time had no interest in the land whatever.

It is not necessary to set forth the allegations of the complaint, except to state that the plaintiff alleged that the defendan Neymeyer had represented that "he was the owner of the fee-simple title" to the land in question, "that said representations * * * were false when made," and that the defendant Neymeyer "was not at the time said contract was made * * * the owner of said property or any part of the same."

The defendant Neymeyer answered, denying the misrepresentations alleged, stated what representations were made by him, and pleaded the contract as a part of his answer. He also counterclaimed against the plaintiff, alleging that the latter had failed and refused to comply with the provisions of the contract in certain material particulars, and prayed that the amount paid by the plaintiff as a part of the purchase price be forfeited as provided in the contract.

The contract is dated August 31, 1920, and the parts that are material here are: "That the seller [Neymeyer] had sold and does hereby agree to convey or cause to be conveyed in fee simple unto the said purchaser * * * by warranty deed, when payment shall have been made by said purchaser of the consideration hereinafter stated, and the covenants hereinafter contained shall have been performed," the land in question, which is fully described. The contract then provides that the purchaser agrees to pay the sum of $9,000 for the land, $2,000 of which was then paid, receipt whereof was acknowledged. The deferred payments were to be made as follows: $2,000 on December 1, 1920, $1,250 to be paid on or before the 1st day of January of the years 1922, 1923, 1924, and 1925, all the payments aggregating $9,000. The deferred payments that were to be made after December 1, 1920, were to bear interest at the rate of 6 per cent. per annum. It is also provided in the contract that, if the purchaser shall fail to make any payments, or any part thereof,

or shall otherwise fail to "perform any of the covenants," time being the essence of the covenant, at the option of the seller the whole of the unpaid purchase price shall immediately become due and payable, and the payments then made shall be forfeited to the seller. It is also provided that the purchaser shall pay all taxes and assessments "on and after January 1, 1921," and, further, that, if the purchaser should "find any defect in the title" the fact shall be communicated to the seller, who "shall have a reasonable time" to cure the defect.

The case was tried to the court, and it found for the plaintiff and entered judgment in his favor for the payments advanced by him on the contract, less the taxes which he had failed to pay for the year 1921.

The defendant Neymeyer, hereinafter called appellant, alone appeals, and vigorously insists that the district court's findings of fact are not supported by the evidence, and that its conclusions of law are erroneous.

The court's findings of fact in effect are merely a repetition of the allegations of the complaint. The finding that is material here is that the appellant represented that he "was the owner of the fee-simple title" to the land in question, and that the representation was false, in that he "was not at the time said contract was made on the 31st day of August, 1920, the owner of such property or any part of the same. * * *" Appellant's counsel insist that at most the evidence of the plaintiff is to the effect that the appellant had represented that he was the owner of the land and not that he had the title in fee, and that he in fact was the owner, just as he had stated. We feel constrained to state at this point that the contract is silent with respect to ownership, or anything of that character.

Appellant's counsel, however, also contend that, although it were conceded that the appellant, at the time the contract was entered into, did not have the fee-simple to the land, if he were the owner thereof as that term in law is understood and applied, the alleged misrepresentation was wholly insufficient to authorize a court of equity to rescind the contract or to interfere with its enforcement.

We are of the opinion that counsel's contentions are sustained by practically all of the authorities. In this connection it is important to keep in mind that the plaintiff alleged in his complaint that he went into possession of the premises immediately after the contract was entered into, that he from thenceforth remained in possession and had the use of the land and the water represented by the water stock that was sold with the land, and that he was in possession when he commenced this action. In his complaint, however, he offered to surrender possession in case the appellant repaid him the amount that had been paid on the purchase price, with interest.

The plaintiff's prayer for relief is as follows:

"Wherefore plaintiff prays judgment against the defendant Gustave A. Neymeyer for a rescission of said contract and for the sum of $4,000, and that as against him his title to said property be quieted. * * * That by said decree it be declared and adjudged that neither of the defendants have any estate or interest whatever in or to said land or water right, and that the title of the plaintiff is good and valid as against them, and that it be declared and adjudged that plaintiff has a lien on the same to the extent of $4,000. That the defendants and each of them be forever enjoined and debarred from asserting any claim whatever in and to said land or any part thereof or said water stock. * * *"

We have mentioned the allegations respecting plaintiff's possession and his prayer for relief merely to show his counsel's theory of the case; and that, to say the least, the prayer is somewhat unusual in an action for rescission and to recover back the purchase price upon the ground of false representations respecting the title. The general rule is that where, as here, the purchaser seeks to rescind and recover back money paid on the purchase price, as a condition precedent to the right of maintaining an action the purchaser must offer to restore the possession to the seller. Maupin, in his excellent work on Marketable Title to Real Estate, p. 739, states the rule thus:

"As a general rule, the purchaser cannot maintain an action to recover back the purchase money on the ground that the vendor has been guilty of fraud in respect to the title, unless he shows that he has actually rescinded the contract, notified the vendor of his

intent to rescind and has offered to restore the premises to the vendee."

As we have seen, the plaintiff merely offers to restore the property upon certain conditions, and only after judgment, and that the same has been fully complied with. This, in our judgment, hardly complies with the general rule. Assuming, however, for the purposes of this decision, that plaintiff's offer to restore possession as made is sufficient, the question still remains: Has he made out a case for rescission and for the recovery of the purchase money?

It should be remembered that the plaintiff has chosen to appeal to equity, and having done so he must not only do equity, but he must convince a court of equity that it has power to interfere in his behalf, and that he is entitled to the relief prayed for, or at least to some substantial equitable relief.

Appellant's counsel insist that, granting all that plaintiff claims, the law, nevertheless, does not authorize a rescission, and that a court of equity is powerless to aid him. In this connection it is important to state the undisputed facts, which are that the appellant, at the time the contract was entered into, did not have the legal title to the land; that the legal title was vested in his cousin Kabiser, who lived in Nebraska; that Kabiser had a claim against the land for $1,277.75 as part of the purchase price; that Kabiser merely held the legal title until such time as appellant should pay him the amount aforesaid. In answer to a letter from plaintiff's counsel, Kabiser replied:

"Now, Owens, the plaintiff, is just as sure of getting his land clear with warranty deed as if I wouldn't have had anything against it. I will do just as I told Owens in a letter some time ago. I told him to hold back $1,277.75 and 6 per cent. interest from the time he bought the land out of his last payment and turn it over to me, and I would send him deed and water right."

True, that letter was written to counsel more than a month after the action was commenced, but the offer to plaintiff was made a considerable time before the action was commenced. The plaintiff, therefore, had no legal cause for bringing this action. It further appeared that either just before or at

about the time the action was commenced Kabiser had conveyed the legal title to the appellant, and the latter thenceforth and at the time of the trial held the absolute legal title to the land in question; that long prior to that time, however, appellant and his wife had executed a warranty deed to the plaintiff for the land, and had deposited the same with a bank in Millard county, with directions to deliver the same to plaintiff when he made full payment of the purchase price as stipulated in the contract. Let it also be remembered that, as hereinbefore stated, the appellant only agreed "to convey or cause to be conveyed in fee simple unto such purchaser * * * by warranty deed, when payment shall have been made by said purchaser of the consideration hereinafter stated, and the covenants hereinafter contained shall have been performed. * * *." In what way, therefore, was plaintiff injured when he commenced this action? True, the water stock had not been formally assigned to him on the books of the corporation by appellant, but plaintiff had constantly used and was using the water and was recognized as a stockholder by the water company, by calling upon him to pay assessments due on the water stock, which he refused to pay. Under these circumstances we think counsel for appellant are correct in their contention that the undisputed facts do not justify an equitable interference in any way, and fall far short of authorizing plaintiff to rescind the contract and to recover back the purchase price he had paid on the land.

We think that, according to the definition of the term "owner" of land, as that term is understood and applied by the courts, appellant was the owner at the 2 time he entered into the contract, and hence had a legal right to enter into a valid contract of sale. Moreover, appellant was vested with the fee-simple title to the land long before, under the stipulations of the contract, he was required to convey. Strictly speaking, therefore, he did not breach his contract.

In referring to the circumstances under which one may be considered the owner of land and may enter into a valid

contract to sell and agree to convey the same without being open to the charge of misrepresentation the Supreme Court of Nebraska, in *McNeny* v. *Campbell*, 81 Neb. 754, 116 N. W. 671, said:

"Upon the question of false representations as to the ownership of the land, it is admitted that the legal title was in Pritchard."

The court then states that Pritchard had given a lease and an option to purchase to the defendant in that action, who had entered into an agreement to sell as the owner, precisely as the appellant did in the instant case. The court then proceeds:

"When one is so situated with reference to a tract of land that he can acquire the title thereto either by the voluntary act of the parties holding the title or by proceedings at law or in equity, he is in a position to make a valid agreement for the sale thereof"— citing cases.

In *Townsend* v. *Goodfellow*, 40 Minn. 312, 41 N. W. 1056, 3 L. R. A. 739, 12 Am. St. Rep. 736, after stating that one who enters into a contract to sell land merely for speculation and in which he is not interested at the time he enters into the contract has no standing in a court of equity, the court proceeds:

"But the general rule is that, where a contract is entered into in good faith, it is not necessary that the vendor be actually in the situation to perform it at the time it is entered into, provided he be able at the proper time to place himself in that situation. Imperfections in the title when the contract is made will form no ground of objection thereto, if removed before the time of completing the purchase"—citing cases.

*Easton* v. *Montgomery*, 90 Cal. 307, 27 Pac. 280, 25 Am. St. Rep. 123, is a case that is frequently cited, both by the courts and the text-writers. In view that the law is clearly stated in the headnote which reflects the opinion of the court, we merely reproduce the headnote.

"In every executory contract for the sale of land, there is an implied condition that the title of the vendor is good, and that he will transfer to the purchaser by his deed of conveyance a title unincumbered and without defect; but the vendor sufficiently complies with this obligation if he is able to give a good title at the time when, by the terms of his contract of sale, he is required to make the conveyance, and the mere fact that the vendor's title was defective

or incumbered at the date of the contract does not give the purchaser the right to recover the deposit made by him."

We likewise quote the headnote to the case of *Crump* v. *Schneider*, 246 Fed. 225, 158 C. C. A. 385.

"Where married men contracted to sell land, title to which was held by their wives, although the evidence indicated that they were not the owners, the purchaser, not having been injured, and a deed from the wives having been tendered, cannot defeat the contract on the ground that it was induced by fraudulent representations."

In a note to *Townsend* v. *Goodfellow*, in 3 L. R. A. at page 740, the annotator states the rule, as he deduces it from numerous cases, in the following words:

"Where the purchaser refuses to go on with his contract, the law permits the seller to file his bill without a tender on his part; which being so, it follows that all he need do is to allege himself ready and willing; and if he can make title according to the requirements of the contract at the time of the decree, the court will aid him"—citing numerous cases.

In *Kimball* v. *West*, 15 Wall. 377, 21 L. Ed. 95, the Supreme Court of the United States, in passing on the question of the right to rescind and recover back the purchase price where the title is discovered to be defective after making and delivering the deed, after stating that, in order to authorize equitable interference, the ends of justice may clearly require it, proceeds:

"When, therefore, it appears that at the time of the hearing the defendant is able to remedy the supposed defect in his title, and in point of fact secures and makes good to the complainants, at his own cost, all that he conveyed to them originally, the complainants must show some loss, injury, or damage by the delay in perfecting the title before they can claim a rescission of the contract. And even if this could be shown, which is not attempted in this case, the court, as a general rule, would not be authorized to decree a rescission, if compensation could be made for the injury arising from the delay in making good the original defect in the title."

In view of the undisputed facts in the case at bar, it is not necessary to refer to the authorities further:

The appellant was able and willing to convey to the plaintiff an indefeasible title to the land, and to transfer the water stock on the books of the water company as he had agreed to do on payment of the full purchase price of the land.

The plaintiff had enjoyed the full benefits of the land and the water during the entire time from the date he went into possession up to the time of trial, and for aught that appears is still in possession and enjoying the benefits. No one ever questioned his right to the land or to the water, and no one ever attempted or threatened to interfere with his possession or his use of either the land or the water. We are of the opinion, therefore, that the court committed manifest error in its conclusions of law and judgment.

As hereinbefore stated, the appellant counterclaimed and averred that the plaintiff had made default in the payment of the installment due January 1, 1922, in the payment of the taxes for the year 1921, in failing to pay the water assessments, and in permitting the water stock to be sold for the assessments, and that in other respects he had not strictly complied with some of the provisions of the contract. Appellant, through his counsel, at the trial, however, suggested to the court that he was willing to permit the contract to be and remain in full force and effect if plaintiff would make the payments as therein provided. Counsel at the hearing in this court also stated that it was not the purpose of their client to take any advantage of the plaintiff by reason of his default, if he was willing to and would comply with the stipulations of the contract. As before intimated, while we are convinced that the plaintiff never has had nor now has a just cause to rescind the contract, yet we are also firmly convinced that the whole difficulty between plaintiff and appellant arose out of the fact that they misunderstood each other's purposes and through too hasty action, and that it would be unfair to adjudge either of them in default without affording both the plaintiff and the appellant an opportunity to comply with the provisions of the contract which in all respects seem fair and just. We say this because, in our judgment, there was no opportunity for the plaintiff and defendant to confer with each other. The plaintiff lived on the land in Millard county while the appellant had removed to Oregon and was living there. Kabiser, as before stated, lived in Nebraska. While it is true that under the

undisputed facts, plaintiff's action must fail, and that therefore the same should be dismissed, yet, for the reasons hereinbefore stated, we feel constrained not to order a dismissal at this time. We are of the opinion that it would be more just and equitable merely to remand the cause back to the district court of Millard county, with directions to that court to permit the parties to agree, if they can, to carry out the provisions of the contract so far as that in fact can be done, in view of the afflux of time, and to permit the parties to make such modifications as they may deem necessary and agree upon, and with further directions that, if the parties cannot agree, then to dismiss plaintiff's complaint and permit the parties to pursue their legal rights in the premises in a proper proceeding.

We remark further that, while ordinarily when an action cannot legally be maintained and one of the parties is required to appeal to this court for relief to determine that question, the whole cost in the proceeding in this court should be taxed against the losing party, yet, for the reasons before stated, that neither party was entirely without fault, and that this action is largely due to mutual misunderstanding, we feel constrained to require each party to pay one-half the costs of this appeal.

From what has been said, it follows that the judgment should be, and it accordingly is, reversed, and the cause is remanded to the district court of Millard county, with directions to carry into effect the views herein expressed.

WEBER, C. J., and GIDEON, THURMAN, and CHERRY, JJ., concur.