[Civ. No. 22322.   Second Dist., Div. Three.   Dec. 13, 1957.]

JOE E. HALL, Appellant, v. JAMES B. HICKEY et al., Respondents.

Bilava & Dean, Van A. Hagenbaugh and Arthur J. Bilava for Appellant.

Zagon, Aaron and Sandler and Marvin Manuel for Respondents.

SHINN, P. J.—The present action is for rescission by a purchaser of a contract for the purchase of a residential property.

Judgment was for defendants, denying rescission, and awarding defendants restoration of possession, damages, and other sums upon their cross-complaint. Plaintiff appeals.

The amended complaint contains three causes of action.

The first alleges that James B. Hickey made certain representations to plaintiff Hall which were untrue, but which were believed by Hall to be true and which induced him to enter into the contract. These alleged representations were (1) that Hickey owned the property, Lot 14, Tract 17049 in Los Angeles County, subject to a $12,000 trust deed at 4½ per cent payable in 25 years in monthly installments of $67, (2) the property was worth more than $15,000 and could not be sold to a veteran under a loan guaranteed by the Veterans Administration, and (3), houses situated as was the subject property were not being sold and would not be sold to veterans under loans guaranteed by the Veterans Administration. It was alleged in the second cause of action that Hickey caused one Allen W. Sill to make false statements in applying for a $12,000 veteran's loan on the property in that in his application Sill represented that he intended to live on the property, whereas it was the purpose of Hickey and Sill that the property would be purchased from Sill by Hickey. The theory of this cause of action was that the loan was obtained through fraud and violation of law, that Hickey's title was thereby impaired, he could not give good title and Hall had a right to rescind because Hickey could not fulfill his contract. The third cause of action merely alleged that Hall agreed to buy the property for $15,750, it was represented by Hickey to be worth that sum, whereas it was worth no more than $12,000. It was alleged that plaintiff had been damaged in the sum of $3,750 and judgment was sought in that amount together with $25,000 as exemplary damages.

The findings as to the first cause of action were that Hickey represented himself to be the owner of the property subject to a $12,000 trust deed, and that the other allegations of misrepresentations were untrue; as to the third cause of action the allegation that the property was worth less than plaintiff agreed to pay for it was found to be untrue.

A demurrer was sustained to the second cause of action of the amended complaint with leave to amend and it was not amended. The issues to be determined were those tendered by the first and third causes of action.

The facts developed by the evidence without material conflict were the following: George M. Pardee, Sr. Construction Company was the owner and developer of a subdivision in Whittier known as Hugheston Meadows in which 136 houses were being constructed. James B. Hickey was exclusive sales agent of the owners. In the summer of 1953 construction

had been commenced of a residence on Lot 14 which was to be identical with a model home then available for inspection. Allen W. Sill, then a sergeant of the California Highway Patrol, and later Chief of Police of Covina, interviewed Hickey with the intention of buying a home in the tract and he decided to purchase the one under construction on Lot 14. He put down $100 and entered into a preliminary purchase agreement. At that time he signed an application for a $12,000 veteran's loan to a lending agency known as Allied Building Credits which was financing purchases of property in the tract. The application was not dated. In the following November Hickey was in possession of the loan application and accompanying papers but some of them were not usable because they bore dates more than 30 days prior to the date when it was proposed to present them to Allied Building Credits. Sill was called upon to remedy this condition. The application for the loan from Allied Building Credits was dated November 18th and accompanying papers were re-executed and dated the same. These were presented to Allied Building Credits on November 18th, marked received on that date, were approved and forwarded to the Veterans Administration where they were approved January 7, 1954; Allied loaned the money. A short time prior to November 18th Hall interviewed Hickey and was shown some of the houses, other than the one on Lot 14, but he made no selection and did not declare his intention to make a purchase. After Sill had executed the documents on November 18th he discussed with his wife the matter of moving from their home in West Covina to the new subdivision. It appears that a transfer of employment from West Covina to El Monte which Sill had been expecting during the previous summer had not materialized, and the Sills decided they did not wish to move. On November 19th or 20th Sill discussed the matter with Hickey. He was informed by Hickey that he had made a good purchase and that if he did not wish to move into the house it could be rented to take care of the monthly payments, it could be resold by Hickey at a substantial profit or, in the alternative, Hickey would buy out Sill for something less than a profit that could be made through a sale to a third party. As a result of this discussion and on November 20th, Hickey returned to Sill his $100 deposit and paid him, in addition, the sum of $450 for the release of any claim Sill had under the agreement entered into during the previous summer. It was agreed

that the Pardee Company would be paid whatever was necessary to obtain title for Sill and that Sill would then transfer it to Hickey. On November 21st, after the transaction with Sill, Hickey entered into a contract with Hall to sell him the property for $15,750. Hall paid $1,000 down, agreed to pay the unpaid balance of the purchase price in monthly installments and agreed to take title subject to a $12,000 trust deed at 4½ per cent interest payable in installments over a period of 25 years. Hickey paid to Pardee Company the sum required for a conveyance of the property to Sill and, according to Hickey's testimony, this amount with the $550 paid to Sill brought his investment in the property to about $1,700. A guarantee of title was obtained and Pardee Company conveyed to Sill on January 20, 1954, who then executed the note and trust deed to Allied. March 24, 1954, Sill and wife conveyed to Hickey and wife. March 29, 1954, Allied sold the trust deed to the First Trust and Savings Bank of Pasadena. Hall moved into the house in February, 1954 and lived there until September, 1955, but thereafter retained the key and control of the property up to the time of and during the trial of the action, which commenced May 1, 1956. Before the trial was concluded Sill and wife executed a quitclaim deed in favor of Hall and placed it in possession of Hickey, but the deed was not delivered to Hall. Hall paid altogether eleven monthly installments of $130, which was the sum of the monthly payments on the contract and the trust deed. Hall alleged in his complaint that sometime in November, 1954 he learned that Hickey's representations were untrue. Having decided that he did not wish to carry out his contract of purchase, Hall consulted an attorney on December 1, 1953, and sought the return of the sums he had paid on the contract and reimbursement for improvements he had made, which he claimed amounted to more than $2,000; negotiations for settlement with Hickey's attorney having fallen through, Hall on March 16, 1954, gave Hickey notice that he rescinded his purchase agreement. Shortly thereafter the present action was instituted.

It is contended on the appeal that on November 21st Hickey did not own the property; the representation that he was the owner subject to a $12,000 trust deed was made for the purpose of inducing Hall to purchase; it was believed and relied upon by Hall; the representation constituted actionable fraud, and the court should have granted rescission with restoration to Hall of the monies paid on the contract and sums expended for improvements. There was no fraud.

It is well settled that one may make a valid contract to sell property he does not own and that the purchaser may not rescind or recover money paid unless the seller when the time comes to convey title is unable or refuses to do so. (*Hanson* v. *Fox,* 155 Cal. 106 [99 P. 489]; *Backman* v. *Park,* 157 Cal. 607 [108 P. 686, 137 Am.St.Rep. 153]; *Pruitt* v. *Fontana,* 143 Cal.App.2d 675, 690 [300 P.2d 371].)

The evidence disclosed that Hall was acquainted with values in the tract, and was satisfied with the purchase price. There was no evidence that the property was worth less than $15,750 and the allegation that it was worth less was found to be untrue. The property was sold to an informed purchaser at a fair price and on fair terms. He suffered no detriment or prejudice. Hickey was general sales agent of the subdivision and was able and willing to deliver title as he agreed. His representation that he owned the property gained him no advantage. There was no basis whatever for an inference that he acted with a fraudulent intent. The charge of fraud was unfounded and plaintiff's case on the first and third causes of action failed.

We now have to consider a most unwarranted course of procedure directed by the court. About a month after the cause had been submitted the court of its own motion reopened the trial for further evidence. The obvious purpose was to elicit evidence pertaining to the second cause of action, which had been eliminated upon demurrer. At the commencement of the second hearing the court had in its possession the deed of trust of Sill and wife in favor of Allied. This document had not been offered in evidence, and was not a part of the record, although it had been stipulated that such a deed of trust had been executed contemporaneously with the conveyance by Pardee to Sill. The court handed the document to plaintiff's counsel asking ". . . do you wish this deed of trust?" It was offered in evidence by plaintiff; defendants objected and it was agreed that defendants would have a running objection to the introduction of any further evidence. The objection was overruled and the trial proceeded. Plaintiff introduced the file of Allied Credits relating to the loan for the evident purpose of proving a violation of law in procuring the loan. Defendants called Sill, who testified that he intended to live on the property at the time he signed the application, November 18th. He explained why he and his wife decided not to move from their home in West Covina. He had signed an agreement to purchase Lot 14 in the summer

of 1953 before the house was completed. He explained why and how he surrendered his rights under the contract to Hickey, for which he received $550. By introducing this evidence in answer to plaintiff's attempt to prove that Sill's application contained a false statement of his intention to live on the property defendants did not waive their objection to evidence relating to the second cause of action.

The evidence received at the subsequent hearing is relied upon by plaintiff as proof that Hickey and Sill committed a fraud in applying for a loan, and he argues that fraud in obtaining the loan would give him the right to rescind his contract to purchase the property.

All the evidence received in the second hearing was outside the issues pleaded or that had been submitted to the court for decision. At the commencement of the first hearing it was stated to the court that the second cause of action had been eliminated on demurrer. The trial proceeded on the first and third causes of action with that definite understanding. The court had consistently sustained objections of defendants to evidence which pertained to the regularity and validity of the loan transaction, that is to say, the evidence had been restricted to the issues of the first and third causes of action.

The voluntary action of the court in reopening the trial for evidence admissible only under the allegations of the second cause of action amounted to vacating the order sustaining the demurrer to that cause of action which had been made by another judge. It purported to reinstate that cause of action and it opened the trial for evidence on an alleged cause of action that had been eliminated from the case. Defendants, of course, had no answer on file with respect to that cause of action, and had no occasion to file one.

The court made the following finding: "A demurrer having been sustained to plaintiff's second cause of action with leave to amend and the plaintiff having failed to amend, there are no issues concerning said second cause of action, and no findings by this Court are necessary or made thereon." Nevertheless, the court stated in another finding ". . . Sills orally agreed with defendants to sell said property to defendants; and it is true that defendant James B. Hickey thereafter assisted said Sills in completing application for said veteran's loan with full knowledge of the fact that the said Sills had no intention of ever living in said property" etc. This finding is relied upon as justification for the statements in plaintiff's briefs that Sill made false statements in his application.

While the finding is entitled to no consideration, it is clear from the evidence that Sill made no false statement in his application.

The argument of plaintiff on the appeal, based upon the theory of the second cause of action, is that if Hickey conspired with Sill to obtain the loan through fraudulent means, Sill could rescind his deed to Hickey and claim title as against Hall, wherefore, it is contended that Hickey could not convey good title to Hall when the time came to convey and Hall properly rescinded his contract of purchase. We cannot perpetuate the error of the trial court by considering questions of law founded upon a partial and inclusive finding which is foreign to any issue which the court heard for decision.

The first cause of action was for rescission upon the ground of fraud. The theory of the second cause of action was that Hickey could never convey good title and that this fact gave Hall a right to rescind. The causes of action were entirely different. ■ Evidence introduced to establish the first cause of action could not be considered as tending to prove the second cause of action unless the parties voluntarily joined in the submission of the issues of the second cause of action for decision. (*Riverside Water Co.* v. *Gage,* 108 Cal. 240 [41 P. 299]; *Ortega* v. *Cordero,* 88 Cal. 221 [26 P. 80].)

■ A finding as to facts not put in issue by the pleadings and which were not submitted by the parties for decision is meaningless and should be disregarded. (*McCormick etc. Co.* v. *Nofziger Bros. Lumber Co.,* 10 Cal.App. 241, 244 [101 P. 688]; *Imperial Valley Land Co.* v. *Globe G. & M. Co.,* 187 Cal. 352, 361 [202 P. 129].)

The objection to the introduction of evidence in the second hearing should have been sustained. The later proceedings that took place were without validity and must be disregarded. Plaintiff failed to establish a cause for rescission or for damages.

The complaint alleged: "That for the purpose of properly caring for and maintaining said real property as hereinabove described, and for improvements of said property, Plaintiff has expended the sum of $2,357.00, over and above the reasonable rental value of said property." The court found ". . . it is also true that plaintiff expended on the improvement of said property sums in excess of the reasonable rental value thereof" etc. One of the original conclusions of law was "Cross-complainants are not entitled to reasonable or any

rental value of the premises following March 16, 1955, the date of termination of the agreement.'' Upon motion of defendants under section 663, Code of Civil Procedure, the court made an amended conclusion, ''Cross-complainants are entitled to a reasonable rental value of the premises following March 16, 1955, the date of termination of the agreement, to June 14, 1956, in the sum of $2,175.00.''

The recovery for deprivation of possession was not for rent, but for damages measured by the rental value. Plaintiff's improvements were made while he was in possession under a contract of purchase. ■ The reasonable cost of the improvements which tended to enhance the value of the property was a proper offset to defendants' damage. The court did not make a finding as to the value to the property of the improvements but there was no dispute with respect to a number of improvements which logically tended to benefit the property. We have considered all the testimony on that subject, and from what is before us, we have formed the opinion that upon a retrial of the issue the court would probably determine that improvements were made which benefited and enhanced the value of the property to the extent of $1,000. We also believe that as an alternative to reversal of the judgment for a partial retrial the parties should be given an opportunity to agree upon a modification of the judgment.

If, within 30 days after this opinion is filed, the parties file with the clerk of this court written consent that the amount of the judgment in favor of respondents be reduced by $1,000, it will stand so modified and, as modified, affirmed. If such mutual consent be not filed the judgment will stand reversed for a retrial of the single issue of the amount, if any, by which the value of improvements made by appellant should be offset against the amounts due respondents. Each party shall bear his own costs of appeal.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied December 31, 1957, and appellant's petition for a hearing by the Supreme Court was denied February 5, 1958.