485 P.2d 1402

**MARLOWE INVESTMENT CORPORATION, Plaintiff and Appellant,**

**v.**

**Zera D. RADMALL and L. Gene Radmall, Defendants and Respondents.**

**No. 12280.**

Supreme Court of Utah.

June 15, 1971.

Peter M. Lowe, Salt Lake City, for plaintiff-appellant.

Don R. Peterson, of Howard & Lewis, Provo, for defendants-respondents.

CROCKETT, Justice:

Plaintiff, Marlowe Investment Corporation, sued to recover payments allegedly accrued on a uniform real estate contract by which the defendants purchased real property upon which there is a fruit stand

in Pleasant Grove, Utah. Upon a plenary trial of the issues, the District Court made findings and gave judgment in favor of the defendants. Plaintiff appeals.

The contract was entered into on April 20, 1963, by which the defendants agreed to purchase the property from Joseph E. and Isabella Bird for the sum of $7800, $500 down and $75 per month. The vendors later assigned the contract to plaintiff corporation. In the fall of that year the defendants had determined to give up the project. In November they so advised Mr. Lowe, managing officer of plaintiff. Defendant testified that he walked into the plaintiff's office just as Mr. Lowe was leaving and stated he was returning the property and the padlock to the stand. Mr. Lowe left, remarking that he was busy and to "tell things to my secretary." Defendant explained to her that he was relinquishing the property and the contract and handed her the lock and keys. No disagreement with his proposal was voiced either by Mr. Lowe or the secretary. However, shortly thereafter the plaintiff filed an action in the Provo City Court for six months' "rent" on the property at $75 per month, a total of $450. Nothing was done in that action, and nothing further happened for over six years. In February 1970 plaintiff filed this action claiming $6000 as past due payments under the contract and attorney's fees in the amount of $1500.

Meanwhile there had been a mortgage on the property to the Utah Savings and Loan Association, executed by the plaintiff. In April 1970 a suit was filed to foreclose the mortgage against the plaintiff, and also joining these defendants. Defendants disclaimed any interest in the property, pointing out their relinquishment years earlier. The plaintiff here did not defend that suit and the mortgage was foreclosed.

In the instant case the trial court stated in its findings of fact:

Based upon the abandonment and the silence of the plaintiffs in failing to pursue the case in the Provo City Court, the defendants were lead to believe that the plaintiffs had accepted the property back * * * The plaintiffs have by their conduct and by allowing its default to be entered in Civil No. 34,427 [the foreclosure proceeding] failed to discharge its duty under the aforementioned contract and to mitigate its damages * * *.

The trial court's analysis and conclusion are supported by sound principles of law. The first relates to the subject of impossibility of performance by the vendor. It is true that ordinarily such a vendor does not necessarily have to have marketable title until the purchaser has

made his payments.[1] Nevertheless, if it plainly appears that he has so lost or encumbered his ownership or his title that he will not be able to fulfill his contract, he cannot insist that the purchaser continue to make payments when it is obvious that his own performance will not be forthcoming.[2] This is particularly true under the instant contract which contains a provision that, "the seller further covenants and agrees that he will not default in the payment of his obligations against said property."

■■ We are not persuaded that there is anything inconsistent with principles of equity and justice in the ruling that the plaintiff should not be allowed to recover under these circumstances:[3] where it had accepted from the defendant without objection the statement of relinquishment and the keys to the property in question, where it either knew or should have known that the defendants were assuming that they had relinquished the property and the contract, and were not in possession or making use of the property, and the plaintiff sat by for a period of six years, then defaulted in its own payments on the property until its ownership had either been lost, or its loss was imminent, and then came forward and asserted a claim to all of the payments that would have accrued under the contract.

The disadvantage to the defendants, necessary to the invocation of the doctrine of laches against the plaintiff,[4] is reasoned thus: if the plaintiff had not given the appearance of acquiescing in the relinquishment of the contract, but had insisted upon its performance, the defendants would have been aware of their continuing responsibility to so use or dispose of the property as to fulfill their obligations. Inasmuch as the trial court could reasonably believe that they were lulled into a sense of security, and thus put at a disadvantage by the conduct of the plaintiff, we see no reason to disagree with his refusal to allow the plaintiff to recover.

Affirmed. Costs to defendants (respondents).

CALLISTER, C. J., and TUCKETT and ELLETT, JJ., concur.

HENRIOD, J., concurs in the result.

1. See Woodard v. Allen, 1 Utah 2d 220, 265 P.2d 398.

2. See Tremonton Inv. Co. v. Horne, 59 Utah 156, 202 P. 547; Leavitt v. Blohm, 11 Utah 2d 220, 357 P.2d 190; 55 Am. Jur. 624, Vendor and Purchaser, Sec. 154.

3. That equitable principles may be applied in a law action see Art. VIII, Sec. 19, Utah Constitution; Rule 2, Utah Rules of Civil Procedure; see also Wasatch Oil Refining Co. v. Wade, 92 Utah 50, 63 P. 2d 1070.

4. See Mawhinney, et al. v. Jensen, et al., 120 Utah 142, 232 P.2d 769.