Wilford Leslie **NEVES** and Gloria Gay Neves, his wife, Plaintiffs and Respondents,

v.

Bruce Earl **WRIGHT** and Shonnie C. Wright, his wife, Defendants and Appellants.

No. 16910.

Supreme Court of Utah.

Nov. 23, 1981.

---

**9.** *Bullfrog Marina v. Lentz, id.,* citing *Bullough*     v. *Sims,* 16 Utah 2d 304, 400 P.2d 20 (1965).

M. Dayle Jeffs, Provo, for defendants and appellants.

Keith E. Sohm, Salt Lake City, for plaintiffs and respondents.

STEWART, Justice:

Plaintiffs initiated this action to rescind a uniform real estate contract for the purchase of a home and to obtain restitution of their payments. Defendants, as sellers, counterclaimed, seeking a declaration of plaintiffs' default under the contract and a foreclosure of plaintiffs' interest. The parties stipulated to a sale of the property, with plaintiffs retaining their right to pro-

ceed pursuant to their complaint, and defendants reserving their rights under the counterclaim. The trial court granted plaintiffs' demand for rescission and restitution of their payments, except for the reasonable rental value of the premises. Defendants' counterclaim for damages was dismissed, and the defendants appeal. The issue is whether the sellers' failure to disclose lack of title, at the time a land sale contract was entered into, constituted a fraud which warranted rescission.

Plaintiffs entered into a uniform real estate contract on April 19, 1977, to purchase from defendants a residence situated in Fillmore, Utah. On May 31, 1977, the parties executed a corrected contract and an escrow agreement. The defendants executed a warranty deed which was deposited with the contract in escrow. According to the ·escrow agreement, the warranty deed was to be delivered to plaintiffs upon payment of the purchase price plus interest.

Eight days prior to the execution of the first contract, on April 11, 1977, the defendants conveyed by a quitclaim deed their interest in the premises to the parents of defendant, Bruce Earl Wright. The deed was recorded the same day. Bruce Earl Wright testified he had been engaged in litigation with Western General Dairies in April 1977. Although Western General Dairies had no security interest in the property, its counsel wrote Mr. Wright two letters threatening to attach the property to satisfy any judgment that might be rendered in its favor. According to Wright, defendants conveyed the property to his parents with the oral understanding that when the lawsuit with Western General was resolved, they would reconvey the property. In June of 1978 the Western General Dairies lawsuit was dismissed, and the property was reconveyed in December, 1978. Wilford Neves testified that had he known the facts, he would not have entered into the contract to purchase.

In February 1978, plaintiffs discovered the prior conveyance and sent a letter to defendants renouncing the sale as fraudulent and void. Plaintiffs notified defendants they were vacating the premises, tendered back the property, and demanded the return of their payments. Later, plaintiffs filed this action seeking rescission on grounds of fraud and breach of contract.

The trial court found that defendants had represented they owned property at the time of sale when, in fact, they had previously conveyed the property to another party by quitclaim deed, and that plaintiffs had acted promptly upon discovery of the facts. The trial court ruled that plaintiffs were entitled to rescind the contract and to a judgment in the sum of $5,755.44 plus interests and costs. This figure represented payments under the contract of $7,555.44 from which $1,800 was deducted as the reasonable rental value of the premises during plaintiffs' occupancy of approximately nine months.

On appeal, defendants contend that the trial court erred in ruling that plaintiffs could rescind the contract on the ground that the defendants did not have title to the property at the time the contract was executed. Defendants maintain that a seller under a uniform real estate contract need not have marketable title until final payment is made or tendered.

As early as 1909, this Court established the fundamental rule that a seller need not have legal title during the entire executory period of a real estate contract. In *Foxley v. Rich*, 35 Utah 162, 99 P. 666 (1909), the seller, upon entering into a contract of sale with the buyer, placed a warranty deed in escrow until the buyer could make final payment. During the executory period of the contract, the seller executed and delivered a second deed to the same premises to a third party. That deed was intended as security for $3,500 which the seller still owed on the premises, but it was absolute in form and recorded. As a result of this apparent transfer of title, the buyer refused to complete the contract of purchase. The buyer alleged that the seller's conduct constituted a rescission or abandonment of the contract. The seller was at all times willing to deliver the escrow deed upon payment of the purchase price. The Court

ruled that the governing principle was whether the title was beyond the control of the vendor so that his acts amounted to a repudiation of his contract, and held that the conveyance to the third party did not excuse the buyer from performing his part of the contract. The Court stated:

> ... If the effect of the conveyance is such that it places it beyond the power of the vendor to comply with the terms of his contract of sale, or amounts to a repudiation of it, or places a substantial burden upon the vendee not assumed by him in the contract, then the vendee need not further comply with his part of the contract, but may treat it as abandoned by the vendor, and sue and recover back any payments he has made upon the contract, in an action for money had and received by the vendor for the use and benefit of the vendee.... Upon the other hand, if the conveyance made has the effect of transferring the title to another, who has received it with knowledge of the existing contract, or where it is not beyond the power of the vendor to comply with the contract of sale, although a conveyance is made, or where, as in the case at bar, the title is transferred in the nature of security for the obligation assumed by the vendee, and the party to whom the title is transferred and the security given is at all times, able, ready, and willing to comply with the contract, and in all cases where the party to whom the title is transferred claims no right to the property, but holds it for convenience merely, and is willing to transfer the title when the vendee shall comply with his contract, then the vendee has no right to regard the contract abandoned, but in order to recover back any payment made by him must rely on some default of the vendor. [Emphasis added.] [*Foxley v. Rich*, 35 Utah 162, 171–72, 99 P. 666, 669–70 (1909).]

In *Owens v. Neymeyer*, 62 Utah 580, 221 P. 160 (1923), the seller, at the time the contract was entered into, did not have legal title to the land. His cousin, who had a claim against the land for $1,277.75 as part of the seller's purchase price, held legal title. About the time an action was commenced by the buyer, the seller's cousin conveyed legal title to the seller, enabling him to convey good title prior to the time established in the contract. The Court held that the purchaser was not entitled to rescission and recovery of the purchase price. See also *Corporation Nine v. Taylor*, 30 Utah 2d 47, 513 P.2d 417 (1973); *Woodard v. Allen*, 1 Utah 2d 220, 265 P.2d 398 (1953).

This Court reiterated the basic principle in *Leavitt v. Blohm*, 11 Utah 2d 220, 223, 357 P.2d 190, 192–93 (1960):

> In considering the soundness of the judgment, we acknowledge our accord with the rule relied upon by the plaintiffs that the vendor in a real estate contract is generally not obliged to have full and clear marketable title at all times during the pendency of his contract of sale because, ordinarily, title need not be conveyed until the final payment is made or tendered; and we further agree that the purchaser cannot use a claimed deficiency in title as an *excuse* for refusing to keep a commitment to purchase property, as was attempted in the case of *Woodard v. Allen*. [1 Utah 2d 220, 265 P.2d 398 (1953).] [Emphasis in original.] [Footnotes omitted.]

The rule that a seller of real estate need not have title at all times during the executory period of a contract, is not designed to favor sellers over buyers; rather, the purpose is to enhance the alienability of real estate by providing necessary flexibility in real estate transactions. Nevertheless, it is essential that in every case there be a close scrutiny of the facts, and the rule must be carefully applied to avoid unfairness, sharp practice, and outright dishonesty. Accordingly, the rule is not without limitation. If it plainly appears that a seller has lost or encumbered his ownership so that he will not be able to fulfill his contract, he cannot insist that a buyer continue to make payments. *Marlowe Investment Corp. v. Radmall*, 26 Utah 2d 124, 485 P.2d 1402 (1971); *Tremonton Investment Co. v. Horne*, 59 Utah 156, 202 P. 547 (1921); *Foxley v. Rich, supra.*

This Court has held as much on several occasions. In *Leavitt v. Blohm*, 11 Utah 2d 220, 357 P.2d 190 (1960), the seller had unsuccessfully attempted to bring its contract of purchase into good standing, but had failed. The owner of the property had twice sued all parties involved in the transaction, including the defendant buyer Blohm, seeking forfeiture of the contract, possession of the premises, and $1,000 attorney's fees. The Court held that where the buyer's right of quiet and peaceable enjoyment of the property had been disturbed because of the lawsuit by the owner against the contract seller and the contract buyer, the latter could rescind. *Tremonton Investment Co. v. Horne*, 59 Utah 156, 202 P. 547 (1921) held that where a seller under a real estate contract was insolvent and unable to complete the purchase of the property he had resold, the buyer under the contract was not required to continue his payments to avoid a forfeiture of his interest. *Cf. Adams v. Reed*, 11 Utah 480, 40 P. 720 (1895).

The basic test in determining whether a buyer can rescind is whether the defect, by its nature, is one that can be removed, as a practical matter, as distinguished from defects which, by their nature, cannot be removed by the seller as a practical matter. *Davis v. Dean Vincent Inc.*, 255 Or. 233, 465 P.2d 702 (1970). A defect which, by its nature cannot be removed by the seller as a practical matter is one "of such a nature that the vendor neither has title 'nor in a practical sense any prospect of acquiring it.'" [*Id.* 465 P.2d at 706.] See also *Gillmore v. Green*, 39 Wash.2d 431, 235 P.2d 998 (1951).

In the instant case, the value of the buyer's bargain was not impaired. The sellers were able to obtain clear title to the property, and at the time of trial had done so. Nor is there evidence that the sellers actively misrepresented their interest in the property.[1] Although the buyers argue, and the trial court found, that the sellers had represented they had clear title, the record only establishes that the sellers failed to disclose that Mr. Wright's parents were the record owners. There is nothing in the language of the real estate contract to the contrary.

The buyers' reliance on the warranty deed in support of the claim of misrepresentation, is also without merit. The defect in the record title at the time the warranty deed was placed in escrow is of no consequence. A warranty deed placed in escrow creates no warranties until the conditions of the escrow are met and the deed delivered. The deed does not therefore constitute a representation as to the status of the title. In *Foxley v. Rich*, 35 Utah 162, 99 P. 666 (1909) the Court stated:

> [E]ven in the absence of any stipulation, the placing of the deed in escrow left it, so far as the passing of title is concerned, precisely as if no deed had been executed. A deed placed in escrow does not become effective until the conditions upon which it is executed have been fully performed, and taking possession of the property by the purchaser, and part performance, ordinarily do not change this rule. [Citations omitted.] [35 Utah at 170, 99 P. at 669.]

Although the parents of Mr. Wright appeared as record title holders at the time of the sale, they, nevertheless, intended to reconvey the property to the sellers and at no time asserted an interest, legal or equi-

---

1. We express no opinion as to what the result should be if a vendor actively misrepresents the state of the title. See generally, *Grundmeyer v. McFadin*, Tex.Civ.App., 537 S.W.2d 764 (1976); *Bryant v. Vaughn*, Tex., 33 S.W.2d 729 (1930). In *Hall v. Hickey*, 156 Cal.App.2d 94, 319 P.2d 33 (1957), the court recognized the well-settled rule that one may make a valid contract to sell property to which he has no legal title and that the purchaser may not rescind or recover money paid unless the seller, when the time comes to convey title, is unable or unwilling to do so. Even though the seller in that case falsely represented that he had clear title, the court found that the seller contracted to sell the property at a fair price, that he was able and willing to deliver the title as agreed, and that the misrepresentation that he owned the property gained him no advantage. Indeed, the seller did secure title to the property and sold it to the buyer in accordance with the terms of the contract.

table, in the property. The deed to the parents was recorded prior to the purchase, and a preliminary title report or an abstract of title would have disclosed the conveyance. Furthermore, upon discovering the prior conveyance, the buyers made no inquiry as to the rights of the seller or the ability of the sellers to acquire the title in fulfillment of their contractual obligations.[2] Cf. *Walker v. C.C. Bintz & Shaw, Inc.*, 3 Utah 2d 162, 280 P.2d 767 (1955).

Under these circumstances, the sellers are not guilty of misrepresentation or breach of contract.

Reversed and remanded for consideration of defendants' counterclaim. Costs to appellants.

HALL, C.J., and HOWE, J., concur.

MAUGHAN, J., heard the arguments, but died before the opinion was filed.

OAKS, Justice (concurring with comments):

I concur in the Court's opinion, but desire to add an additional caveat.

Cases cited in the majority opinion show that a buyer can rescind a real estate contract when it appears that there is a substantial doubt that the seller will be able to fulfill his commitment to deliver the agreed title at the agreed time. But the variety of circumstances that can arise with a title during the executory period of a real estate contract and the variety of possible explanations that can be given for apparent problems or negative prospects make it imperative that the buyer not act unilaterally in renouncing a contract because of a particular problem or prospect without giving the seller an opportunity and a reasonable time to explain or give assurances. The fact that these buyers renounced the contract without making any inquiry of the sellers as to their actual ownership or ability to acquire title to fulfill their contract obligation is therefore critical to my concurrence in the Court's opinion.

If the buyers had made such inquiry and had been given the facts that appear in the record in this case, the buyers would have been entitled to demand that the sellers obtain reconveyance from their grantees (Wright's parents), failing which the buyers would have the remedy they sought in this case. In view of the motive for the sellers' conveyance to these grantees, the sellers may not have been able to enforce the grantees' oral promise to reconvey when the Western General lawsuit was resolved. E.g., *MacRae v. MacRae*, Ariz., 294 P. 280 (1930) (refusing equitable relief on a conveyance and oral undertaking remarkably similar to this case); *In re Xydias' Estate*, 92 Cal.App.2d 857, 208 P.2d 378 (1949) (same); Bogert, *Trusts & Trustees* § 211, pp. 69–84 (rev. 2d ed. 1979). Also, see U.C.A., 1953, § 25–1–7 (fraudulent conveyance); *Barker v. Dunham*, 9 Utah 2d 244, 342 P.2d 867 (1959) (same). The sellers' rights to compel reconveyance pursuant to their grantees' oral promise are, in any case, sufficiently doubtful that the property cannot be assumed to be available to them on demand. U.C.A., 1953, § 25–5–1; *Restatement of Trusts, Second* § 44 (1959).

This is just the sort of circumstance where the buyers should not be required to assume the risk of the sellers' inability to perform for the duration of the contract. The buyers should therefore be able to demand proof of reconveyance from the grantees to their sellers, failing which they should be entitled to rescission as sought in this case.

2. 8A, *Thompson on Real Property* (1963 replacement), § 4487 at 534 states:
  ... [E]quity will refuse a purchaser relief if the defects of which he complains might with

reasonable diligence have been discovered by him prior to the execution of the contract. [Citations omitted.]